(No. 12378.—Decree affirmed.)

Louis G. Spies, Appellant, *vs.* Charles W. Byers *et al.*
Appellees.

*Opinion filed April 15, 1919.*

1. INJUNCTION—*motion to dissolve injunction operates as de-murrer.* A motion to dissolve an injunction for want of equity on the face of the bill operates as a demurrer and all matters of fact well pleaded in the bill are thereby admitted, and, where an injunction is the only relief sought, if the facts do not justify the relief it is proper to dismiss the bill.

2. EQUITY—*equity has no jurisdiction over matters of a political nature.* The jurisdiction of a court of equity pertains only to the maintenance of civil, personal or property rights, and it has no jurisdiction over matters or questions of a political nature unless civil rights are involved.

3. CONSTITUTIONAL LAW—*the courts cannot enjoin an election which is part of the process of legislation.* Under the provision of the constitution requiring a vote of the people on all laws creating corporations with banking powers, the submission of such a law at an election is a part of the process of legislation, and the courts cannot enjoin such election at the suit of a tax-payer even though it involves a useless expense because the law as signed by the Governor and submitted to the people omits certain adopted amendments and is therefore not the act which was finally passed by the General Assembly.

4. SAME—*courts can consider validity of a statute only after it is in force and civil rights are involved.* Courts have no general power to consider proposed and uncompleted legislation to determine whether an act will be valid or invalid if enacted into law, but it is only after legislation has been completed that the courts, in determining the civil, personal or property rights of litigants, may refuse to enforce a statute which is invalid, and their jurisdiction in that respect is limited to the determination of such rights.

APPEAL from the Circuit Court of Sangamon county; the Hon. F. W. BURTON, Judge, presiding.

THOMAS D. MASTERS, and C. H. JENKINS, for appellant.

EDWARD J. BRUNDAGE, Attorney General, C. FRED MORTIMER, State's Attorney, CLARENCE N. BOORD, and CHURCH, SHEPARD & DAY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Louis G. Spies, filed his bill in the circuit court of Sangamon county on July 31, 1918, alleging that he was a citizen and tax-payer of Kankakee county engaged in the business of conducting a private bank in the village of Chebanse, and praying for an injunction restraining Charles W. Byers, county clerk of Sangamon county, and each county clerk of the remaining 101 counties, from causing to be printed on the ballots at the ensuing election the proposition to vote for or against an act approved by the Governor on June 22, 1917, amending the title and certain sections of an act concerning corporations with banking powers, and from incurring any expense with reference to said proposition, which had been certified to the county clerks by Louis L. Emmerson, Secretary of State, as required by the act, and in accordance with a general statute providing for the publication of propositions required by law to be submitted to the electors. A temporary injunction was ordered and issued as prayed for. The appellees, Charles W. Byers, county clerk, and Louis L. Emmerson, Secretary of State, entered their appearances and moved the chancellor to dissolve the injunction for want of equity on the face of the bill. The motion was sustained, and the appellant having elected to abide by his bill, the injunction was dissolved and the bill dismissed at his cost, and he appealed from the decree.

The motion to dissolve the injunction for want of equity on the face of the bill operated as a demurrer and all matters of fact well pleaded in the bill were thereby admitted, and an injunction being the only relief sought by the bill, if the facts did not justify the relief it was proper to dismiss it. *Titus* v. *Mabee,* 25 Ill. 257; *Prout* v. *Lomer,* 79 id. 331; *Heinroth* v. *Kochersperger,* 173 id. 205; *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214; *Goddard* v. *Chicago and Northwestern Railway Co.* 202 id. 362.

These facts were alleged in the bill and admitted by the motion: The bill for the act was introduced in the senate and passed and was thereupon presented to the house of representatives for its action. As passed by the senate, section 8 provided for a charge by the Auditor for each examination of a bank of a minimum fee of $25. In the house that section was amended by striking out the word "minimum," leaving a fixed fee of $25. Section 11 as passed by the senate contained a scale of required capital stock ranging from $15,000 to $100,000, based upon the population of the city, town or village where a bank was to be located. That section was amended in the house so as to permit a bank with a capital stock of $10,000 to be organized in cities, towns and villages not exceeding 500 inhabitants. The bill went back to the senate for its action with respect to the amendments, and the senate refused to concur and the house refused to recede. As a result a joint committee of conference was appointed, which made a report recommending the adoption of the amendments proposed by the house, and the measure was passed by both houses as amended. The bill was sent to the Governor with sections 8 and 11 reading as they originally stood when the bill first passed the senate and in that form it was approved by him. The bill as signed by the Governor and as finally filed and enrolled in the office of the Secretary of State and as it appears in the printed statutes is not the same as the act finally passed by both houses of the General Assembly.

As a general, well established and recognized rule, the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights, and it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. (*Walton* v. *Develing,* 61 Ill. 201; *Fletcher* v. *Tuttle,* 151 id. 41; *Heffran* v. *Hutchins,* 160 id. 550.) The proposition whether the act in question should become a law was one of public policy and of a political nature in its broadest sense, and the

determination of the question was the exercise of legislative power. Not only does the general rule put such a question beyond the bounds of equity jurisdiction, but the powers of the government are divided into three separate departments, independent of each other. The people, as the depository of all power, in their sovereign capacity enacted the fundamental law and by it divided the powers of government. Article 3 is as follows: "The powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." By article 4 the people vested legislative power in the General Assembly, consisting of a house of representatives and senate, both to be elected by the people, but they did not confer as to banks absolute power of legislation and specifically retained a portion of that power so far as it related to them. Section 5 of article 11 is as follows: "No act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

Under the general delegation of legislative power the proceeding for the enactment of laws prescribed is that bills may originate in either house but may be altered, rejected or amended by the other, and no bill shall become a law without the concurrence of a majority of the members elected to each house. When so adopted every bill, before it becomes a law, must be presented to the Governor, and if he approves he shall sign it, and thereupon it shall become a law. In the case of any law authorizing or creating

corporations or associations with banking powers further action is required, and the necessary legislative steps are the concurrence of a majority of the members of the senate and house of representatives, the approval by the Governor and an affirmative vote by a majority of the votes cast at an election for or against the law. Courts are endowed by the constitution with judicial power, only, and are prohibited from interfering with other branches of the government in the exercise of their powers. They cannot obstruct the exercise of legislative functions, and have no more right to interfere in the process of legislation where the final act is the exercise of legislative power at an election than there would be at any other stage of the process. No one would contend that a court could enjoin either branch of the General Assembly from passing a bill, or the Governor from acting upon it, on the ground that the completed legislative act would be invalid, and the same rule necessarily applies to any interference with the electors in the final act of legislation. Courts have no general power to consider proposed and uncompleted legislation to determine whether an act will be valid or invalid if enacted into law. After legislation has been completed, the courts, in determining the rights of litigants respecting personal, civil or property rights, may, and it is their duty to, refuse to enforce a statute which is invalid, but their jurisdiction is limited to the determination of such rights. They can neither direct the enactment of a law nor prevent its enactment on any ground whatever, and that being so, a court of equity would have no power to entertain a bill of a tax-payer on account of the expense of the legislation. The trifling cost of putting the proposition on the ballots would be in the same category with any other expense of the legislative branch of the government. These principles have been declared in various cases with respect to the submission of amendments to constitutions, elections under the initiative and referendum, elections under ordinances alleged

to be invalid, and other like proceedings, with the reasoning of which we agree. (*Scott* v. *James*, 114 Va. 297; *Duggan* v. *City of Emporia*, 84 Kan. 429; *State* v. *Thorson*, 9 So. Dak. 149; *People* v. *Mills*, 30 Colo. 262; *City of Dallas* v. *Dallas Consolidated Street Railway Co.* 105 Tex. 337; *Threadgill* v. *Cross*, 26 Okla. 402.) There are some decisions adopting a different view, but they are contrary to the weight of authority and we do not regard the reasoning as sound. The case of that class in which the subject was most fully considered and the authorities reviewed is *Ellingham* v. *Dye*, 178 Ind. 336, decided by a divided court, in which the Secretary of State, the Governor and two electors appointed by him were enjoined from submitting to a vote an act of the legislature containing the existing constitution with twenty-three amendments. The dissenting opinion seems to us to be a complete and satisfactory answer, both on reason and by authority, to the view of the majority as to the jurisdiction of a court to interfere in such case. At any rate, under the provisions of our constitution the conclusion that the court had no jurisdiction in this case seems to us inevitable. It is also to be noted that the bill was filed at a time when it was uncertain whether the act in question would be approved by the people, and if it should never become a law the appellant would suffer no injury to his business as a private banker. If the act should be adopted and its validity be brought before a court of equity in the exercise of its jurisdiction, the question would then arise whether the act as a whole would be void or its validity would be affected only as to changes made by the amendments.

The decree is affirmed.

*Decree affirmed.*