(No. 21255.—)

I. A. MILLER *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 8, 1932.*

CHARLES F. BURKE, (DANIEL S. WENTWORTH, FRANK TYRRELL, and FREDERICK BERTRAM, of counsel,) for appellants.

WILLIAM H. SEXTON, Corporation Counsel, and EDWARD F. DUNNE, (JOSEPH F. GROSSMAN, and FRANCIS J. BENDA, of counsel,) for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

On July 31, 1931, appellants, I. A. Miller and Harry A. Bollman, filed their bill in chancery in the superior court of Cook county against the city of Chicago, the mayor, city comptroller, city clerk and board of election commissioners, and the individual members thereof, to restrain them from carrying out the provisions of an ordinance passed by the city council of the city of Chicago on July 10, 1931, entitled, "An ordinance re-districting the city of Chicago into fifty wards," pursuant to the mandatory provisions of the Fifty Ward act of the State, which require the city of Chicago to be divided into fifty wards. A demurrer was sustained to the bill, an amended bill filed, a demurrer sustained thereto, a decree entered dismissing the bill for want of equity and an appeal taken therefrom to this court, the trial court certifying that the validity of a municipal ordinance is involved.

The first question arising is as to whether the case presented by the bill is one cognizable by a court of equity. It is a general, well established and recognized rule in this State that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights and that it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. (*Spies* v. *Byers*, 287 Ill. 627; *People* v. *McWeeney*, 259 id. 161.) In the instant case the bill alleges the invalidity of

the ordinance and alleges that various specific illegal expenditures of public moneys will be made by appellees in carrying out the provisions of the ordinance unless restrained by injunction. Allegations similar to those here made were held sufficient to warrant the intervention of a court of equity in *Moran* v. *Bowley,* 347 Ill. 148, *McAlpine* v. *Dimick,* 326 id. 240, and other cases.

Section 1 of part 5 of the Fifty Ward act (Laws of 1919, p. 254, adopted November 2, 1920,) provides: "The city of Chicago shall be divided into fifty wards. In the formation of wards the population of each shall be as nearly equal as practicable and each shall be composed of contiguous and compact territory." The ordinance in question divides the city into fifty wards. The population of the respective wards in accordance with the 1930 general census is set out in the bill as follows:

| Ward Number | Population | Ward Number | Population | Ward Number | Population |
|---|---|---|---|---|---|
| 1 | 56,882 | 18 | 75,550 | 35 | 70,373 |
| 2 | 82,000 | 19 | 62,197 | 36 | 72,413 |
| 3 | 75,212 | 20 | 65,441 | 37 | 70,548 |
| 4 | 69,909 | 21 | 60,269 | 38 | 65,148 |
| 5 | 79,258 | 22 | 61,561 | 39 | 69,000 |
| 6 | 75,008 | 23 | 63,028 | 40 | 68,044 |
| 7 | 88,584 | 24 | 64,976 | 41 | 68,482 |
| 8 | 75,510 | 25 | 69,603 | 42 | 60,537 |
| 9 | 73,687 | 26 | 63,472 | 43 | 55,608 |
| 10 | 66,552 | 27 | 59,241 | 44 | 61,537 |
| 11 | 68,520 | 28 | 65,258 | 45 | 68,368 |
| 12 | 73,453 | 29 | 67,120 | 46 | 65,640 |
| 13 | 66,534 | 30 | 67,806 | 47 | 74,216 |
| 14 | 67,660 | 31 | 71,077 | 48 | 71,995 |
| 15 | 66,191 | 32 | 68,062 | 49 | 75,109 |
| 16 | 68,932 | 33 | 70,105 | 50 | 68,137 |
| 17 | 72,023 | 34 | 67,148 | | |

It is claimed by appellants that the wards created by the ordinance are so unequal in population that they are un-

lawful and void. It is alleged in the bill of complaint that a prominent civic organization and a university, after many months of intensive study and investigation, evolved a plan for re-districting the city into fifty wards, which plan would comply with all of the requirements of the Fifty Ward act of the State legislature, and under which plan the greatest variance in population between the least populous and the most populous wards, as proposed, was 3000, and that such plan was dismissed without consideration. The details of this plan are not set forth in the bill and we have no means of knowing the basis of the plan or the manner of its making. If streets, blocks and all other considerations be set aside and streets and blocks be disregarded, no doubt an even closer equality of population might be obtained. The legislature, however, in its wisdom did not see fit to confer legislative power on civic organizations or universities but entrusted the duty and responsibilty of re-districting the city into wards to the judgment and discretion of the city council, subject to constitutional restrictions and the limitations contained in the enabling act. According to the United States census of 1930 there was a population in Chicago for that year of 3,376,438. Dividing the total population by 50 would give an average of 67,528 to each ward. The total population of all of the wards, as shown by the amended bill of complaint, is 3,442,984. Dividing this figure by 50 would give an average population of 68,859 to each of the wards. Taking both of the above computations into consideration, a fair average for each ward would fall within the two figures 67,528 and 68,859.

An examination of the schedule of population for each of the fifty wards set up in the amended bill shows that eight of the new wards are within the figures and hence approximate the average. Twenty-eight, or more than one-half of all of the wards, are within five per cent, forty-one out of the fifty wards are within ten per cent, and forty-five of the wards are within fifteen per cent of these average fig-

ures. The smallest ward is within eighteen per cent and the largest ward within twenty-seven per cent of the average population of each ward. The mandate of the statute is not that the population of each ward shall be equal but "as nearly equal as practicable." Manifestly, in dividing the city into wards many elements enter, such as natural or artificial dividing lines, rivers, transportation facilities, the use of well known streets, the congruity or incongruity of the population, and are properly given consideration.

This case differs from the recent case of *Moran* v. *Bowley, supra,* as by the Congressional Apportionment act considered in that case the population of the fifth district was three and four-tenths times as great as that of the seventeenth. The re-districting of the city into wards is a legislative power conferred by the statute upon the city council. From the nature of the power to be exercised and ·from the language of the act it is evident that it was not the intention or expectation of the legislature that the division into wards should be made by the council with mathematical exactitude as to population but that variations therefrom were intended to be left to the practical exercise of the sound discretion of the council upon a consideration of the varying elements and difficulties entering into the task. It is only when the result obtained by the exercise of such power is so capricious or arbitrary as to be unreasonable that a court can intervene and declare the same invalid. (*City of Chicago* v. *Thielans,* 334 Ill. 231; *City of Carbondale* v. *Reith,* 316 id. 538.) It is evident that considerable consideration was given by the council to the question of the population of the various wards in the preparation of the ordinance in question, and we would not be justified in declaring it invalid on the ground of disparity of population.

One of the alleged grounds of invalidity of the ordinance is that "the community of Woodlawn, in said city, being a long established community, has been divided into two wards under said re-districting ordinance, and that the

community and civic life of the community will suffer thereby, and it will become necessary to consult with two aldermen into whose wards part of said community will fall, before any legislation affecting East Sixty-third street, the community's most important thoroughfare, can be introduced in said city council." There might have been some force in this argument at the time Woodlawn was called upon to give up its separate entity and become a part of the city of Chicago. When annexed to Chicago it lost its entity and like any other part of the city became liable to be from time to time, as the growth of the city and other circumstances required, subdivided into wards.

It is also alleged in the bill that portions of the 5th ward under the re-districting ordinance are entirely isolated from the balance of the ward by a large park area, known as Washington Park; that parts of the 11th, 14th, 16th, 28th, 31st, 39th, 40th and 41st wards, as designated in the ordinance, are separated and isolated from other parts of the same wards by large parks, cemeteries, railroad yards and industrial centers, in a manner to make such wards composed of territory not contiguous and compact within the mandates of the Fifty Ward act. The parks, cemeteries, railroad yards and industrial centers are parts of the city of Chicago and as such must be placed in some wards, and wherever placed, so far as the bill shows, the effect would be the same.

The bill states that the ordinance is a "political division" of the city without regard for the property interests and the community and civic interests of the city. This is a mere conclusion of the pleader and no specific facts are stated therefor. While a general demurrer admits the truth of all allegations of the bill well pleaded and raises the question of the sufficiency of the bill for equitable relief, (*Dunne* v. *County of Rock Island,* 273 Ill. 53; *McAlpine* v. *Dimick, supra; Power* v. *Green,* 333 Ill. 101;) yet a demurrer does not admit conclusions drawn by the pleader where the spe-

cific facts on which the conclusions are based are not alleged. *Labadie* v. *Morris*, 303 Ill. 321; *Big Creek Coal Co.* v. *Tanner*, 303 id. 297; *Ross* v. *Clark*, 225 id. 326; *Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 id. 469.

The allegations of the amended bill were not sufficient to warrant the court in granting the relief prayed, and the court properly sustained the demurrer and dismissed the bill.

*Decree affirmed.*