Board of Education of Community Consolidated School District 606, County of Tazewell, State of Illinois et al., Plaintiffs-Appellees, v. Board of Education of Community Unit District 124 of Counties of Mason and Tazewell, State of Illinois et al., Defendants. Board of Education of Community Unit District 124 of Counties of Mason and Tazewell, State of Illinois, Defendant-Appellant.

**Gen. No. 10,073.**

Third District.

October 16, 1956.

Rehearing denied November 13, 1956.

. Released for publication November 13, 1956.

Kenneth H. Lemmer, Richard W. Velde, and John S. Gaw, all of Havana, for appellant.

Dempsey and Kuhfuss, and Roth S. Smith, of Pekin, for appellees.

JUDGE CARROLL delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Tazewell County declaring void an election held pursuant to petitions for detachment and annexation of certain territory of a school district and perpetually enjoining the Board of Education of the annexing district from exercising jurisdiction over the areas affected by the annexation proceeding.

The action was brought by the Board of Education of Community Consolidated School District No. 606 in Tazewell County and thirty-seven residents and legal voters of said district. The Board of Community Unit School District No. 124 in Mason County, R. C. Theis, County Clerk of Tazewell County and a number of other parties were named defendants. However, the cause was subsequently dismissed as to all except the two defendants above named.

Prior to the institution of the detachment proceedings with which we are concerned on this appeal, Consolidated School District No. 606, to which we will refer as District 606, lay north of and adjoined District 124. District 606 maintained grades 1 to 8, inclusive, and District 124 maintained grades 1 to 12, inclusive. At an election held in District 606 on March 31, 1953, a proposition to annex all of said district to District 124 was defeated. Subsequently, there were filed with the County Superintendent of Schools certain petitions for an election on the proposition of detachment of two portions of the territory then embraced within District 606 and their annexation to District 124. At an election held on May 14, 1953, the proposition carried in both petitioning areas. This election was held pursuant to the provisions of Section 4B—6, Chap. 122, Illinois Revised Statutes, 1951.

One of the territories detached from District 606 referred to in the briefs as the "upper area" adjoins District 124 along a common boundary for about three quarters of a mile and contains approximately three

sections including a part of Talbott's Subdivision, upon which the school building of District 606 is located. The other, or "lower area," has approximately seven miles of common boundary with District 124 and comprises about twenty sections north and west of said district.

The substantive allegations of the complaint are that the petitioners, in drafting the petitions for detachment of the two areas of District 606, disregarded the rights and interests of the remaining residents, voters and school children of the said district; that the lines of the petitioning area were so drawn as to exclude therefrom enough voters opposed to detachment of said areas to make it certain that the propositions would carry at the election; that the petitioners intentionally and without regard for the rights of landowners, tenants and school children, included farms in the area sought to be detached, but excluded the residences of the owners or tenants of such farms who were opposed to the detachment, thereby depriving such residents of the right to vote in the election; that the petitioners intentionally and with utter disregard for the rights of school children, residents and voters of District 606 included in the area sought to be detached the only schoolhouse and facilities located in said district; that if said school facilities are detached the property valuation remaining in District 606 would be insufficient to support a bond issue for the construction of a school building for use by said district and as a result the people thereof will be unable to conduct a school; that residences of persons known to be opposed to the detachment proceeding were excluded from the area sought to be detached and that the children of these residents will be obliged to travel many miles to a school in some other district; that after July 1, 1953, if the detachment of territory becomes effective, District 606 will have no school

411

facilities; that there. is no district other than District 124 to which the remaining portion of District 606 can be annexed; that the petitioners seek unlawfully and inequitably to force such remaining portions of District 606 to annex to District 124; that if the change of boundaries is permitted to stand the boundary lines of the two districts will be such as to render the same unreasonable, arbitrary, unjust, oppressive and inequitable.

It is further alleged in the complaint by way of conclusion, that the actions of the petitioners are such as to constitute an abuse of the power delegated to them by the legislature of the State of Illinois under the statute authorizing the detachment proceedings in question. The prayer of the complaint is that the Board of Education of District 124 be restrained from taking control of the territory detached from District 606; that the County Clerk of Tazewell County be enjoined from extending taxes levied by District 124 against the detached areas and that the election of May 14, 1953 be declared null and void.

The defendant Board of Education of District 124 moved to dismiss the complaint on the ground that equity is without jurisdiction to determine an election contest and that the legality of the annexation of territories to a school district can be tested only by quo warranto. This motion was denied and defendants ruled to answer. The complaint was later amended to include an allegation that the description of the "upper area" was void. The cause was referred for hearing to a Master who found that the detachment proceedings were void because of constructive fraud and an insufficient description of the "upper area" and recommended the entry of the decree to which we have previously referred.

In view of the conclusion reached herein, we refrain from exploring or commenting on the evidence in the record.

It is contended by defendants that only political rights are involved in this proceeding and therefore equity has no jurisdiction and that since plaintiffs seek to challenge the validity of the annexation and detachment of school territory the exclusive remedy available to them was quo warranto.

If this contention be upheld, it will be unnecessary to consider other grounds for reversal which are urged. Accordingly, we first undertake determination of the question raised by such contention.

■■ It is a generally well established and recognized rule in this state that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights and that it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. Spies v. Byers, 287 Ill. 627; Miller v. City of Chicago, 348 Ill. 34; People v. Barrett, 203 Ill. 99; Fletcher v. Tuttle, 151 Ill. 41. With reference to that which is embraced within the terms "political rights" and "civil rights," Bouvier says:

"Political rights consist in the power to participate, directly or indirectly, in the establishment or management of government." "Civil rights are those which have no relation to the establishment, support or management of the government. These consist in the power of acquiring and enjoying property, of exercising the paternal and marital powers, and the like." (2 Bouvier's Law Dic. p. 485.)

The distinction between civil and political rights is lucidly pointed out by the court in Sheridan v. Colvin, 78 Ill. 237, where it is said:

". . . the subject matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the

413

jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of government, except under special circumstances, and where necessary for the protection of rights of property."

The question in the instant case is whether the rights which plaintiffs seek to enforce by their complaint are political or civil. From plaintiffs' allegations which we have herein detailed to some extent, it appears that the basis of their claim to relief is that the effect of the results of the election upon District 606 coupled with the circumstances surrounding the drafting of the petitions constitutes a constructive fraud upon plaintiffs. More specifically, it is alleged that in a prior election on March 31, 1953, a proposition to annex all of District 606 to District 124 was defeated; that the boundary lines of the detaching territories were drawn so as to deprive persons opposing the annexation from voting in the election thus rendering a favorable result therein a certainty; that the school facilities of District 606 were included in the detaching territory which was in disregard of the welfare and rights of the school children of such district and that the action of the petitioners, the voters in the election and the defendants is so unreasonable, arbitrary, unjust and oppressive as to constitute an inequitable disregard of the rights and interests of District 606 and an abuse of the power delegated by the legislature of Illinois to the petitioners under the statute authorizing the change of boundaries accomplished by the election.

An analysis of the import of these allegations must be made with due regard for the extent of the author-

ity of the courts to deal with problems involving the organization of school districts or the alteration of the boundaries thereof.

Section 1 of Article VIII of the Constitution of 1870 provides: "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of the state may receive a good common school education."

The effect of this constitutional mandate is to require the legislature in the exercise of its powers to establish by appropriate legislative enactment a system of free schools. To meet the responsibility thus enjoined upon it, the legislature has provided for the creation of school districts. A district thus created is a quasi-municipal corporation or minor subdivision of the state and serves as an administrative arm of the legislature in putting into effect the will and intention of that body. People v. Wood, 411 Ill. 514.

The area comprising a school district may be divided, contracted or abolished at the will of the legislature. Dolan v. Whitney, 413 Ill. 274. In exercising control over the territory comprising a particular district, the resident voters thereof become the agents of the legislature. By following the procedure prescribed by enabling legislation the voters of such district meet the responsibility of determining all questions relative to its boundaries. The theory behind this legislative policy is that the settlement of all questions relative to boundaries of a school district should be left to the resident voters thereof. People v. Deatherage, 401 Ill. 25.

When in pursuance of a valid legislative enactment these voters act upon a proposition to alter the boundaries of a school district, they do so as the agents of the legislature. As was said in People v. Deatherage, supra, "Those voters, in a practical sense, become administrative functionaries to administer the law."

415

The section of the school code pursuant to which the election in controversy was conducted has been held valid. People v. Community Unit School Dist. No. 3, 2 Ill.2d 454. The election was not contested and failure to comply with the provisions of the statute is not charged in this action. Since the detachment proceedings were conducted in full compliance with the statute authorizing the same, it follows that the voters of the detached areas in exercising the authority thereby vested in them, were acting as the agents of the legislature in administering a provision of the school law. In so doing they were discharging a governmental function.

■■ With the character of the acts of the voters thus established, it becomes obvious that the allegations of the complaint charge only that these voters improperly used the authority vested in them by the legislature. No injury to the plaintiffs' property rights is alleged. The substance of plaintiffs' complaint is merely that the voters failed to properly perform a governmental function. The jurisdiction of chancery courts does not include power to interfere with the public duty of governmental departments except where it is necessary for the protection of property rights. A voter who participates in the creation of a school district, or in the conduct of the affairs thereof, exercises no inherent right to do so but only avails himself of a privilege conferred by the legislature. This privilege recognizes no vested property rights of such voter in the district or its school facilities. The continued existence of a school district and the operation of a school therein is dependent entirely upon the will of the legislature. People v. Community Unit School Dist. No. 3, supra.

We think there can be no doubt as to the fact that the complaint herein fails to allege any injury, actual or prospective, to the property of plaintiffs.

Whereas plaintiffs claim in this case the results of a school election are such as to warrant the conclusion that the voters have misused and abused their powers, then the remedy must be sought in the legislature and not in the courts. People v. Deatherage, supra.

The apparent theory upon which plaintiffs seek to sustain the proposition that chancery jurisdiction may properly be invoked herein is that as a result of the actions of the voters participating in the election a fraud was perpetrated upon the Board of Education of District 606 and the portions of said district remaining after the petitioning area is detached and that the court exercising equitable powers may declare the election void.

Regardless of how this theory may be characterized, it proceeds upon the assumption that plaintiffs and other persons residing in District 124 have a vested right in said district and the school facilities thereof. Furthermore, it may be observed that to sustain plaintiffs' proposition would require holding that the jurisdiction of equity includes the power to inquire into the legality of the detachment proceeding.

█ In many cases the Supreme Court has held that where it is sought to test the legality of the detachment of territory from a school district the exclusive remedy available for such purpose is quo warranto. Board of Education of Community High School Dist. No. 166 v. Thorp, 336 Ill. 227; Baird v. Community High School Dist. No. 168, 304 Ill. 526; Manchester Community High School Dist. No. 121 v. Murrayville Community High School Dist. No. 123, 309 Ill. 403.

In arguing that the complaint states a case for equitable relief, the plaintiffs rely principally upon the cases of Fisher v. Birkey, 307 Ill. 625, and 299 Ill. 145.

In these cases, which emanated from a single controversy, it was held that an order of a county superintendent of schools might be set aside by a court of

417

equity where such order was shown to be so unreasonable and oppressive as to constitute oppression and a wanton disregard of the rights and interests of those complaining. When the order involved in these cases was entered, the School Act provided for the formation of new school districts and the changing of the boundaries of existing districts by township trustees when properly petitioned, to satisfy the wishes and convenience of a majority of the inhabitants of the township. The Act further provided that all districts be composed of contiguous and compact territory. An appeal from the decision of the trustees to the county superintendent of schools was authorized. Petitions for a new district to be formed from parts of four districts were filed in accordance with the statute and were denied by the trustees. On appeal the county superintendent reversed the action of the trustees and held that organization of the new district would be for the best interests of the districts and inhabitants thereof.

In holding the action of the Trial Court correct in setting aside the order of the superintendent of schools, the Supreme Court in effect ruled that although school officers in exercising the power to divide townships into school districts to suit the wishes and convenience of a majority of the inhabitants thereof or to make changes in districts were vested with a large discretion, their action must not be arbitrary and in disregard of the best interests of the inhabitants and taxpayers of all the districts involved. As stated by the Court, the basis of the plaintiffs' bill giving a court of equity jurisdiction was that the action of the county superintendent of schools was unreasonable and oppressive.

Here we are not concerned as was the Court in the Birkey cases with the question as to whether the action of a school officer in making a change in district bound-

aries amounted to an abuse of the discretion vested in him. The action of which plaintiffs complain was that of the voters in effecting a detachment of territory from one district and annexing the same to another adjacent district under a valid statute enabling them to do so.

The alleged disastrous result upon the remaining territory of District 606 accomplished by the election and of which plaintiffs complain are of no consequence in determining the question of the authority of a chancery court to grant the relief prayed.

In the Birkey cases, the Court dealt with the discretionary power of a school officer under certain sections of the school law to form new school districts or alter the boundaries of existing districts to suit the wishes and convenience of a majority of the inhabitants of the township affected. Thus the effect of any particular action of such school officer upon all of the township became a factor in determining the validity of his actions. Sec. 4B—6 provides that only the voters of the territory sought to be detached and of the district to which the territory is to be annexed shall vote upon the detachment proposition. If it was the intention of the legislature to give recognition to the wishes of the inhabitants of all of the district from which territory is detached, then provision therefor would be found in the Act. Injection of such requirement by the courts would constitute an unwarranted interference with legislative power.

■ For the reasons herein indicated, we conclude that the amended complaint fails to state a case for equitable relief and defendants' motion to dismiss the same should have been sustained.

The decree of the Circuit Court is reversed.

Reversed.

REYNOLDS, P. J. and ROETH, J., concur.