(No. 21061.—
GRANT KEIME, Appellant, *vs.* COMMUNITY HIGH SCHOOL
DISTRICT NO. 296 *et al.* Appellees.

*Opinion filed April 23, 1932.*

M. P. Rice, and William C. Worley, for appellant.

Chiperfield & Chiperfield, for appellees.

Mr. Justice Jones delivered the opinion of the court:

Grant Keime, a property owner, tax-payer and elector in Community High School District No. 296 in Fulton county, Illinois, filed a bill in the circuit court of that county on May 26, 1930, against said district and its board of education seeking to restrain them from carrying out the provisions of a certain agreement alleged to have been entered into by them with Common School District No. 96 in Fulton county, and also from selecting and purchasing an undivided one-half interest in ten lots located in Cuba, Fulton county, upon which was a school building owned and used at the time by district No. 96. The bill also sought to enjoin defendants from constructing a school gymnasium building upon the school site and from issuing bonds to the amount of $30,000 in payment thereof. The bill was amended, a demurrer was filed, and upon a hearing the demurrer was sustained. Complainant having elected to stand by his bill as amended, a decree was entered dismissing it. From that decree complainant, to whom we shall hereafter refer as appellant, has perfected an appeal to this court.

The important facts as disclosed by the bill are substantially as follows: Common School District No. 96 lies within the boundary lines of Community High School District No. 296 in Fulton county, and appellant was not an elector or tax-payer in district No. 96. The latter district owned and used for school purposes ten lots, with a commodious school building located thereon, in Cuba. Some time "within a few months last past," as stated in the original

bill, the boards of education of the two school districts entered into an alleged agreement whereby district No. 96 agreed to sell, and district No. 296 agreed to buy, an undivided one-half interest in the Cuba school site and building, and after such sale the site and building were to be used and maintained jointly by the two school districts. The consideration to be paid by district No. 296 for such site was the erection by it thereon of a school gymnasium building to cost not more than $30,000, and this building was also to be used and maintained jointly by the two school districts. A petition was presented by the electors of district No. 296 to its board of education, and pursuant thereto a special election was called, notice thereof given and the election held in the district on March 29, 1930. At this election the following propositions were presented by ballot to the voters: (1) To select a school house site in and for district No. 296; (2) to authorize the board of education of district No. 296 to purchase a school house site for said district; (3) to authorize the board of education of district No. 296 to build a school building in and for that district to be used as a school gymnasium; and (4) to authorize the board of education of district No. 296 to issue bonds of the district to the amount of $30,000, specifying the date of the bonds, their maturity dates and the rate of interest the bonds should bear. Each of the four propositions received an affirmative majority vote and the votes were thereafter properly canvassed.

It is stated in the bill that the special election was called in Community High School District No. 296 for the purpose of carrying out the supposed agreement between the boards of education of the two school districts, but that no election was ever held in Common School District No. 96 authorizing the sale of its school property or authorizing the execution of any agreement by its board of education for the transfer of any interest in or sale of its school site and building. The bill also states that district No. 296 in en-

tering into the alleged agreement with district No. 96 claims to be acting under and by virtue of the authority of an act of the General Assembly of the State of Illinois entitled, "An act to authorize school districts to acquire a site from other school districts, to authorize school districts to jointly use the same school site, to authorize school districts to jointly construct and use the same school building, to authorize one school district to purchase an equal or any other interest in any site and buildings thereon, within the boundaries of both, when used under an agreement by both, but owned by but one, and to take title to same, under an agreement between the two, and under the terms of said agreement, or of a new agreement, to add to and enlarge, if deemed necessary to the uses of the purchasing district, the part or parts of said building used or to be used by said purchasing district, the expense to be borne by said purchasing district or by the two districts as may be provided by the terms of said agreement, and to legalize such actions heretofore taken," approved 1923 and amended 1927. (Smith's Stat. 1929, p. 2677.) Sections 1 and 2a of the act are as follows:

"Sec. 1. Whenever the board of directors or board of education of any two school districts shall have agreed upon the joint use of any school site and compensation to be paid therefor, and any such site shall have been selected in the manner required by law, it shall be lawful for such school districts to use the same school site and after payment of such compensation, the trustees of schools of the township by proper instrument in writing, shall declare that title to such school site is held for the joint use of such school districts according to the terms of such agreement, and such districts shall be further authorized to construct, maintain and use a building jointly for the benefit of the inhabitants of such districts."

"Sec. 2a. Whenever two school districts comprising the same territory identically, or comprising partly the same ter-

ritory, the one with the other, have within the boundaries of both, a certain school site with buildings thereon, owned by one of said districts, but used, under agreement, by both, the said district owning said site and buildings may sell to the other, and said other district shall have the right to purchase, an equal, or any other, interest in said site and buildings, under an agreement between the two; and thereupon, upon the execution of said agreement, and the acquiring the title to said interest by said purchasing district, said two districts shall be deemed to hold title to said premises as tenants in common; and thereafter, and after the acquiring of said title, the said school districts, or either of same, may, under appropriate terms in the first agreement, or under a new agreement entered into by and between the said two districts, add to and enlarge any part or parts of said buildings, if deemed necessary for the uses of said districts, or either of them, in any way and by such sole, or mutual, expenditure of funds as may be nominated in and by the terms of said agreement between said districts, and neither shall said expenditures in any way change the individual interests of said districts in said premises unless otherwise expressly so provided in and by the terms of said contract or agreement."

It is first contended by counsel for appellant that the act in question is unconstitutional, as it violates section 2 of article 2 and sections 9 and 10 of article 9 of our constitution. It is urged that by the alleged arrangement between the two school districts it is proposed to use taxes collected from property of appellant by Community High School District No. 296 to assist in maintaining and supporting a part of the buildings for the use of the grade and common schools of Common School District No. 96, which would be depriving appellant of his property without due process of law; that such arrangement or agreement between the two school districts would require the imposition of taxes upon the municipal corporation of district No. 296,

in which appellant is an elector and tax-payer, for the benefit of the schools in district No. 96, wherein appellant is not a tax-payer or elector, and that such arrangement would also permit the municipal officers of district No. 96, in which appellant is not an elector, to have a voice in the management of the property of district No. 296.

The provision of our constitution relative to education is found in section 1 of article 8, which is as follows: "The General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." In *Fiedler* v. *Eckfeldt,* 335 Ill. 11, this court said with reference to this section of the constitution: "This was a command addressed to the legislature, and it has been construed as a limitation also on its power to provide for the maintenance by local taxation of free schools of a different character from that named in the section. It was not a grant of power, for the legislature has the inherent power to enact all laws proper for the government or welfare of the people of the State not prohibited by the constitution of the United States or of this State. (*Richards* v. *Raymond,* 92 Ill. 612.) The legislature gets no greater power from the command. When we look for the limitations on that power we find these two, and these two only, which the courts can enforce: that the schools shall be free, and that they shall be open to all equally. The court has enforced these limitations when the occasion requiring the enforcement of them arose. (*People* v. *Board of Education,* 101 Ill. 308; *People* v. *Mayor of Alton,* 193 id. 309; *People* v. *Moore,* 240 id. 408.) There are no others to which the judicial power extends. The command of the constitution is addressed to the General Assembly alone. It was not a self-executing provision but required legislation to give it effect, and the responsibility and duty of providing the system and the means and agencies by which it should be made effective rest upon the General Assembly alone."

There is no constitutional restriction or limitation placed upon the legislature with reference to the formation of school districts or the agencies which the legislature shall adopt to provide the system of free schools, and the General Assembly may provide for the establishment of school districts for different purposes and confer upon the respective local authorities or boards of education the power of taxation to the extent of the legislature's will. (*People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 288 Ill. 70; *People* v. *Pinari,* 332 id. 181; *Fiedler* v. *Eckfeldt, supra.*) Apparently the purpose and intention of the legislature in enacting the law here under consideration were to make it possible, where desired and practicable, for two school districts to use and own the same school buildings, and thereby avoid the expense connected with separate school plants and improve the efficiency of the educational facilities for the benefit of the inhabitants of each school district. School districts are quasi-municipal corporations, are subject to the plenary control of the legislature, and the latter body may from time to time, in its discretion, abolish school districts, or enlarge or diminish their boundaries or increase, modify or abrogate their powers. (24 R. C. L.. par. 6, p. 563.) We are of opinion the act is not obnoxious to the provisions of the constitution, as urged by appellant.

It is also contended by appellant that the notices of election were defective in not setting forth the proposition to be voted on at the election as set forth on the ballots, and that the price to be paid for the site was not specified in the notices or on the ballots. The notice for the special election used appears in the abstract and sets forth the four propositions to be voted upon by the voters of Community High School District No. 296, one of which was to select a school house site in and for said school district, and another was to authorize the board of education "to purchase a school house site in and for said school district." The ballots used at the election gave the description and

size of one proposed site located in the city of Cuba, and recited that such site was owned and used for school purposes by Common School District No. 96 in Fulton county; that it was proposed to purchase an undivided one-half interest in said property which was to be used jointly by the two school districts, and stated the maximum estimated cost of acquiring such one-half interest in the school site was to be the cost of constructing an additional building on the premises to cost not more than $30,000, to be used as a school gymnasium, and thereafter said site and buildings were to be maintained jointly by the two school districts. The notices and ballots used were in such form as to clearly present to the electors and tax-payers the propositions to be voted upon at the election.

Appellant cites the case of *Trustees of Schools* v. *Berryman,* 325 Ill. 72, in support of his assertion that a failure to specify the price in such case is fatal to the election. Paragraph 5 of section 127 of our School law (Smith's Stat. 1929, p. 2634,) provides, in part, that where a petition is presented to a board of education requesting that an election be called to locate or purchase a school house site and such election pertaining thereto is held, the location, size and price of such proposed site or sites as are authorized to be placed on the ballot shall also appear thereon. The statute contemplates that the price of a proposed site is to be stated if the purchase is to be made at private or voluntary sale, and that the maximum estimated price or cost be stated if condemnation proceedings appear to be necessary to obtain the site. Obviously the exact cost or purchase price could not be stated in the petition presented to the board of education unless the price was actually known. The statute places a limitation upon the board of education, whereby the board is not authorized to purchase any property for a sum in excess of the price or maximum estimated price stated on the ballot. That was the substance of the decision in the *Berryman case,* where the verdict of the jury

in a condemnation proceeding instituted to secure the property exceeded the maximum price stated on the election ballot authorizing the purchase of the property. In the instant case the maximum estimated cost of the half interest in the site was to be the cost of a school gymnasium building to be erected upon the premises by Community High School District No. 296 and which building cost was not to exceed $30,000. Until the completion of the structure doubtless its exact expense could not be stated, but there was a limitation provided for, which under the circumstances was a sufficient compliance with the statute.

It is further contended that section 2a of the statute here involved does not authorize the construction of an additional building but merely permits enlargements or additions to any buildings already existing on the premises, and that the law is only applicable to two school districts where the property is owned by one district but is being used by both districts under an existing agreement. That section of the act contemplates such enlargements or additions as may be reasonably necessary for the efficient and ecomonic operation of the schools and a narrow or limited construction should not be given to the statute. The alleged agreement between the two school districts or the date of its execution does not appear in the bill of appellant, and there is no allegation therein that the property at the time was not used jointly by the two school districts under some agreement. The electors and tax-payers of Community High School District No. 296 sought and participated in an election for the purpose of carrying out the provisions of the act here involved, and in our opinion the procedure was a substantial compliance with the law.

The decree of the circuit court of Fulton county will therefore be affirmed.

*Decree affirmed.*