(No. 30580.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
CHARLES F. DEATHERAGE *et al.*, Appellees.

*Opinion filed September 24, 1948.*

WILLIAM L. FAY, State's Attorney, of Jacksonville, (W. R. BELLATTI, of Jacksonville, and MURPHY & MURPHY, of Carlinville, of counsel,) for appellant.

BARBER & BARBER, (CLAYTON J. BARBER, ALTON G. HALL, and SAMUEL C. FIELDEN, of counsel,) all of Springfield, for appellees.

FRED H. KELLY, and CRAIG VAN METER, both of Mattoon, *amici curiae,* and F. E. MERRILLS, of Belleville, for Board of Education of Community High School District No. 195, St. Clair County *et al., amici curiae.*

HAROLD W. NORMAN, ALLYN J. FRANKE, LOUIS ANCEL, BENJAMIN B. CRANE, MOORE M. PEREGRINE, WALTER D. HERRICK, JR., JOHN LYLE VETTE, and S. ASHLEY GUTHRIE, all of Chicago, other *amici curiae.*

Mr. Justice Crampton delivered the opinion of the court:

The legislature in 1947 enacted a statute whereby the organization of community unit school districts, to maintain grades one to twelve, inclusive, was permitted. This became sections 8-9 to 8-14, inclusive, of article 8 of the School Code.

The State's Attorney of Morgan County by *quo warranto* questioned the validity of the organization of the Waverly Community School District No. 6, and the right of defendants as members of the board of education to hold office. They, by answer, endeavored to justify by pleading the successive steps taken to organize the district, and to place them in office. The plaintiff moved to dismiss the answer as legally insufficient to justify and asked for judgment. This the circuit court of Morgan County denied, and the plaintiff elected to stand by its motion. The judgment held the district to be legally organized and the defendants the lawful incumbents of their offices. The appeal is direct to this court because questions of the validity of a statute and a right of franchise are involved.

The plaintiff has attacked the act as violative of several provisions of the constitution of 1870, and also points to several alleged failures to comply with requirements of the act, both being equally fatal insofar as the Waverly unit district is specifically involved. This court, on motion, allowed certain individuals to file briefs as *amici curiae*, all supporting the plaintiff-appellant.

Section 1 of article VIII of the constitution of 1870 provides: "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this state may receive a good common school education." The plaintiff contends the section is violated by the community unit school act when it is utilized to create such district by the inclusion of territory which constitutes only a

fraction of an existing and partially underlying elementary or high school district. Such fractionated underlying district would, plaintiff argues, be left with such a small segment of territory and population as to make it impossible for the district to maintain a school at the prior level of efficiency and thoroughness. Plaintiff believes such to constitute considerably less than the "thorough and efficient system" required by the constitution. Plaintiff admits this is the first time the court has been called upon to determine the validity of a statute allowing such alleged situation to be developed, or of any similar enactment. We are asked to do the above, and much else, on the foundation of issues developed by the pleadings only, unsupported by any evidence adduced in the case.

We must first ascertain whether this court has the duty and the power to determine whether a specific school system is thorough and efficient. Where issues before this court involve the constitutionality of statutes permitting the creation of school districts, the court is necessarily limited in decision to a narrow field. This is true because of the inherent power of the legislature and section 1 of article VIII of the constitution. The section simply operates as a mandate to the legislature to exercise its inherent power to carry out a primary, obligatory concept of our system of government, *i.e.*, the children of the State are entitled to a good common-school education, in public schools, and at public expense. Prior decisions of this court have held the section to also place upon the legislature two limitations when implementing that concept: the schools established, *i.e.*, the system, must be free and must be open to all without discrimination. (*Fiedler* v. *Eckfeldt*, 335 Ill. 11; *Keime* v. *Community High School District No. 296*, 348 Ill. 228; *People ex rel. Tuohy* v. *Barrington High School District No. 224*, 396 Ill. 129.) This court has consistently held the section to impose the two

limitations, and no more. *People* v. *Barrington School District,* 396 Ill. 129.

This court has also been consistent in holding that the question of the efficiency and thoroughness of the school system established by legislative permission is one solely for the legislature to answer and that the courts lack power to intrude. (*Wilcox* v. *People ex rel. Lipe,* 90 Ill. 186; *Owners of Lands* v. *People ex rel. Stookey,* 113 Ill. 296; *People ex rel. Woodyatt* v. *Thompson,* 155 Ill. 451; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270.) In *Fiedler* v. *Eckfeldt,* 335 Ill. 11, we said, it is not for the court to determine if the system is the best which could be brought forth. School problems are essentially practical ones,—what is best cannot be easily answered. "It is no more within the authority of the court to pass judgment upon the thoroughness and efficiency of the system, or any part of it, than to determine whether the laws enacted for the protection of operative miners, in compliance with section 29 of article 4 of the constitution, are such as are necessary for that purpose; whether the action of the Governor in removing an officer for incompetency, neglect of duty or malfeasance in office, under section 12 of article 5, is justified by the facts; * * * All these questions have been held to be matters for legislative determination, with which the courts have no right to interfere. * * * Even if the legislative intent might be thought crude or unwise and the law unjust or oppressive, errors of legislation are not subject to judicial review unless they exceed some limitation imposed by the constitution. Within those limitations the legislative power is supreme and judicial power cannot interfere with it."

A community unit school district, like any other school district established under enabling legislation, is entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district,

over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. The State may hold or manage the facilities directly or indirectly. The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature. The "property of the school district" is a phrase which is misleading. The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject to the legislative will. *People ex rel. Taylor* v. *Camargo School Dist.* 313 Ill. 321, and cases cited therein.

The legislature has always adhered to the policy of never creating school districts by direct action. The policy has been to enact enabling legislation, whereby the resident voters of a defined area proposed for a school district of a certain type were given the responsibility of determining whether such district should be established. The intent of the people concerned was found by an election or by a petition. This policy is undoubtedly predicated upon the legislature's belief that persons primarily affected are the best judges of what type of school will best serve; or not serve them, within the bounds of the proposed district; this to be done against the background of local needs, desires and conditions. This policy caters to the concept of local self-government. *People* v. *Camargo School District,* 313 Ill. 321; *Husser* v. *Fouth,* 386 Ill. 188.

We take judicial notice of the fact that the whole area of the State has been divided into school districts. Therefore the territory described in the petition for the organization of the Waverly Community Unit School District No. 6 must have included the territories of several whole school districts. No evidence was heard in this case in the court below, and we cannot tell from the record whether the organization of the Waverly district resulted in the

fractioning of one or more underlying districts. In any event, the mere fact of a school district being fractioned when a community unit school district is organized, does not *ipso facto* establish that the school system, within the emasculated district, lacks efficiency and thoroughness.

In *People ex rel. Russell* v. *Graham,* 301 Ill. 446, the constitutionality of the act enabling the establishment of community consolidated school districts was under attack. (Laws of 1919, p. 904; Ill. Rev. Stat. 1947, chap. 122, art. 8.) It was charged the act did not provide a thorough and efficient system of free schools, so all the children of the State may receive a good common-school education. Therein we held, page 451, "The wisdom or justice of such legislation is not a question for the courts. The courts are concerned only with the question of the legislative power to enact it." Then, on page 452, we said, "It is not for the courts to say that the legislature has acted unwisely in selecting the agencies or methods which it deems best to carry out the mandate of the constitution, and the courts cannot interfere *unless the legislature, or the officers authorized by the legislature to act in its stead, have, as a matter of fact, created a system of free schools which all reasonable men must agree is not an efficient and thorough system, as those terms are commonly and generally understood."* The quoted portion above which we have italicized is in opposition to the prior quotation, and was not necessary in deciding the particular point. Unfortunately it conveys the erroneous impression that the question of "efficiency and thoroughness," in respect to the constitutional statement, can, under certain circumstances, become properly cognizable in a court; although, at all other times, it is purely a factual matter. The error was subsequently corrected by the court in *People* v. *Camargo School District,* 313 Ill. 321. On page 327 thereof, we quoted the above, and then said without equivocation, "Whether the amendment," [the particular law under consideration,] "complained of tends to affect adversely or favorably the

thoroughness and efficiency of the system of free schools is a legislative question which is not for our determination, and this amendment cannot be held, as a matter of law, to violate section 1 of article 8 of the constitution." We abide by that holding.

Counsel endeavor to involve the act under consideration with section 1 of article VIII of the constitution on the following theory: the thoroughness and efficiency of the system of free schools must redound to the benefit of *all* children of the State, to the extent they may receive a good common-school education. This is predicated upon the proposition that the residents and voters of the underlying districts have certain vested property rights therein which cannot rightfully be destroyed or impaired by the absorption of whole, or portions of underlying districts. Less than all of the children will be served, it is said, whose parents happen to live in that portion of a fractioned district which is not taken into the petition for the organization of the *first* community unit school district. This viewpoint rests upon the presumed deprivation of adequate school facilities claimed as a vested property right. Our holding in the *Camargo case* that all school facilities are the property of the State, subject to the will of the legislature in effectuating the policy adopted in order to carry out the constitutional mandate, destroys the contention.

Employing the same theory of vested property rights, it is also contended the act violates section 2 of article II of the constitution, and the fifth amendment to the Federal constitution, the due-process provisions of each. They cite *Board of Education* v. *Blodgett,* 155 Ill. 441, to support their stand. The case is not in point. There, the board of education had issued bonds. The Statute of Limitations had run, and the legislature enacted a statute so suit could be brought to collect the bonds. The Statute of Limitations was pleaded on the theory the board had a vested property in that defense and the amendatory extension violated sec-

tion 2 of article IV. We sustained the plea because the limitation was a vested property right protected by the constitutional guarantee. This contention cannot be sustained, the vested property right claimed being nonexistent. The alleged violation of the fifth amendment is based upon the theory of the deprivation of a property right without due process of law. The amendment is only a limitation upon the power of Congress and has no application to acts of State legislatures. *Hallinger* v. *Davis,* 146 U. S. 502, 36 L. ed. 986; *Hirabayshi* v. *U. S.* 320 U.S. 81, 87 L. ed. 1774.

It is further contended the act deprives those voters residing in the territory of an existing district, which is not taken into the new community unit school district, of their right to vote on the proposition of organizing the unit district contrary to section 18 of article II of the constitution; their standpoint being that such election cannot be free and equal. We concede such persons would have a great personal interest in such election, either from the standpoint of desiring all their district taken in or all not taken. The mandate of section 18 of article II covers only those who are qualified voters in the particular election. It does not guarantee that every person with a patent interest in the outcome of a school election has, because of that interest, a right to vote therein. The legislature possessing all power to legislate in reference to public school matters, limited only by the stated limitations found in section 1 of article VIII of the constitution, no resident of a school district has an inherent right of franchise insofar as school elections are concerned. His right to vote therein is purely a permissive one bestowed by legislative grace in furtherance of the policy of the legislature. The bestowal of the power to organize a school district, either by petition or by election, bestows only a privilege as distinguished from a right. The *Camargo case* held that, and was reaffirmed in *Husser* v. *Fouth,* 386 Ill. 188. The residential standard

to be met for voting on the proposition of organizing a community unit school district is: only those residing in the territory described in the petition for submitting the proposition may vote in the election. Evidently, in the opinion of the legislature, they are the most important group, not those who are residents of what would be the remaining portion of a fractioned district. The fact that certain residents of such district are willing to join in the organization of a community unit school district is evidence of a difference of opinion within the district over its worth as constituted. Section 18 of article II cannot be used to compel, as a matter of right, the participation in the election of all the voters in a district threatened with loss of a part of its territory to a proposed community unit school district.

The plaintiff seeks to use section 18 of article II, charging there is a denial of the right of free and equal election under the act in reference to the election of members of the board of education. The basis of this is found in section 8-12 of the act. It provides that where the area of the district is greater than two congressional townships, (the Waverly unit district is greater,) or more than 72 square miles, not more than three members of the seven on the board shall be selected from any one township. The section does not provide for printing on the ballots (1) the township in which each candidate resides, and (2) the instruction to vote for not more than three candidates from one township. This situation, it is said, makes it very likely a voter may waste at least a part of his votes through voting for more than three candidates who are, unknown to him, from one congressional township. Therefore, this lack of knowledge will operate to deny the uninformed voters of the equality of election required by the constitution because some of the voters will possess the requisite information. Such supposititious circumstances did not occur in the election of the board for the Waverly unit district;

the requirements of the section were fully met. Counsel are somewhat dubious over whether the point is a hypothetical one, inasmuch as the evils envisioned from the language of the section did not materialize·in the Waverly unit election. Consequently they have endeavored to show that the court may, with all propriety, consider the point. They believe the lack of those requirements in the section, if invalid, would as a consequence render the whole act void. For that reason we choose to determine the point.

The constitutional guarantee gives to every qualified voter the free exercise of his right to cast his vote without suffering any restraint; and his vote, when cast, shall have the same influence as the vote of any other voter. (*People ex rel. Lindstrand* v. *Emmerson,* 333 Ill. 606.) There is no contention that any voter was restricted or that the same weight was not given to every vote cast when the election for board members was held. The election was, therefore, both free and equal. (*People ex rel. Lewman* v. *Moyer,* 298 Ill. 143.) Everything in the nature of other alleged reasons for holding the whole act invalid on constitutional grounds being pushed aside, they say we must hold the whole act invalid for that one reason. The result of the Waverly unit board election is concrete evidence that an evil result will not inevitably flow from the lack of those requirements in the section. Were those so-called necessary requirements in the section, they would be of no avail in the event the board election was preceded by an invalid organization of the district. Here they would have the whole act declared invalid, notwithstanding the fact that a district may have been fully organized by full compliance with applicable provisions of the act. The lawful organization of a community unit school district is not dependent upon the lawful election of board members, for no election of the board can be held until there is a district in being. In the section under discussion, the basic requirement therein is that not more than three

board members shall be elected from a congressional township. The legislature did not command the county superintendent to print such informative messages on the ballot, and it did not forbid him to do so. Good discretion on his part would lead to the printing of that information. The fact he did not do so, and should more than three candidates from one congressional township be elected to the board, would make the board unlawful, for it would not be in compliance with the mandate of the section. The inevitable consequence would be another election for board members. It is the duty of this court to presume a statute under constitutional attack to be valid, and if the statute be susceptible of two constructions, the interpretation favoring its constitutionality is to be adopted. (*Punke* v. *Village of Elliott,* 364 Ill. 604; *Illinois Zinc Co.* v. *Industrial Com.* 366 Ill. 480.) The section does not transcend the constitutional requirement.

The plaintiff states the Waverly Community Unit School District No. 6 is composed of some territory derived by fractioning existing common school districts, and the same could happen in other organizations of like districts; and that to deny to the voters of all the district fractioned the right to vote upon the proposition of the organization of the community unit school district, coupled with the right given to voters outside the district to fraction it, constitutes an unlawful delegation of legislative power contrary to section 1 of article III of the State constitution. Plaintiff concedes the right of the legislature to do so directly, but argues it cannot delegate that power to a fraction of the voters.

Plaintiff is in error in believing this question has never been determined by this court. In *People* v. *Camargo School District,* 313 Ill. 321, we had under consideration a statute which permitted, on petition of one half and the vote of three fourths of the voters of a former common school district, territory thereof to be detached from a

community consolidated district and re-established as a common-school district. That could be done without the vote of all the voters of the community consolidated school district. It was contended the statute conferred legislative, judicial and executive powers upon the voters of the common-school district. We held it was not the exercise of either of said powers when the inhabitants of any territory availed themselves of the privilege of organizing a school district in line with the authority given by statute which explicitly sets forth the rules and conditions therefor.

In *Husser* v. *Fouth,* 386 Ill. 188, the same argument was voiced because a statute allowed detachment of territory on petition of two thirds of the voters of the territory to be detached. We held there was no conference of legislative power.

The plaintiff has failed to distinguish between the power to make a law and the authority or discretion to execute it. If it be said that the legislature, under the constitution, cannot provide for the fractioning of a school district except by the express consent of a majority of all the voters therein, it naturally follows that it cannot create or terminate a school district without such consent. This, in effect, would amount to placing the voters of a school district on a parity of power with the legislature.

Territory proposed for a community unit school district must meet the precedent requirements of 2000 population and $6,000,000 equalized assessed valuation. Subsequent to organization of the district the minima need not be maintained. Detachment of territory according to plaintiff may, by successive amputations thereof, put the district out of functional existence. Because the minima are not permanent conditions, plaintiff believes the act to be special legislation contrary to section 22 of article IV of the State constitution.

There cannot be a constitutional objection to the classification of persons, or objects, for the purpose of legislative

regulation, so long as it is not arbitrary and is founded upon some substantial difference properly related to the classification. Classification is a legislative function. It can never become a judicial question unless a court is confronted with the question whether the legislature acted unreasonably in a particular circumstance. We must be able to say that there is no fair reason for the law which would not require with equal force its extension to others it did not touch. (*Hansen* v. *Raleigh,* 391 Ill. 536.) When the classification is reasonably adapted to accomplish the legislative purpose and is not arbitrary, it will be sustained. (*Stearns* v. *City of Chicago,* 368 Ill. 112.) The plaintiff must carry the burden of showing the classification is arbitrary and does not rest upon a reasonable array of facts warranting the classification. *Stewart* v. *Brady,* 300 Ill. 425.

The precedent classification requirements pertain solely to the organization of a community unit school district, and bear no relation to the continuance of the district. The organization of such district must embrace an elementary district, or districts, and a high school district, or districts. It undoubtedly was the intent of the legislature, by the classification, to comply with the constitutional requirement that the common schooling of children should be thorough and efficient, as it interpreted that command against the background of the prevailing circumstances of the present and of the foreseeable future. The constitutional requirement cannot be complied with under such circumstances unless there be sufficient pupil enrollment and tax income.

Areas are highly variable from the population and equalized assessed valuation angle. It would be a futile act to organize a community unit school district unless the territory involved possessed a population sufficient to furnish elementary school graduates who would attend high school in sufficient numbers to warrant the district. Such

district must be organized to maintain all twelve grades,—not a less number. We do not consider the 2000 population minimum to be arbitrary, or unreasonable as a classification factor.

Plaintiff believes there is no reasonable ground for using equalized assessed valuation as a classification factor. The use of such is not new. It is used in the organization of township high school districts and community high school districts. The two factors of population and equalized assessed valuation complement each other. The effective employment of the two factors will enable the attainment of a reasonable working balance between them in respect to pupil load in the schools of the district and the income thereof. To do so will execute the legislative intent.

The legislature has always, as a matter of policy, left to the resident voters the settlement of all questions involving school district territory. They acted to determine such questions either through the mode of petitioned elections or by petitions to the appropriate public official or officials clothed by law with the power to annex or detach territory; the legislative theory, of course, being that at the time of or subsequent to the organization of a school district there necessarily would arise certain territorial inequities involving matters of population, valuations of property for taxation, compactness and contiguity, and other matters. The resident voters of the particular territory are the delegated agents of the legislature to administer the enabling legislation, thereby implementing the legislative intent to obey the constitutional mandate of insuring an efficient and thorough common schooling for all the children of the State *via* free public schools, open to all without discrimination. Those voters, in a practical sense, become administrative functionaries to administer the law. Whenever they utilize the delegated administrative power and authority to impair the complementary nature of the two factors of classification, and thereby disturb the bal-

ance between pupil load and tax income to an extent which renders the district inefficient and lacking thoroughness from the scholastic standpoint, those voters have violated the trust placed in them by the legislature. Such improper use of that power and authority simply entails a plea to the legislature for remedial action. The courts cannot act to give relief from such violations of administrative functions, unless such violations fall within the scope of constitutional limitations. The fact that there may have been, or will be, such violations of trust does not serve to make the act violative of section 22 of article IV of the constitution.

Section 13 of article IV of the State constitution requires the subject of an act to be expressed in its title, and no law shall be amended by referring to it only. The amended section must be set out at length in the new act. Plaintiff charges House Bill 575 (the Community Unit School Act) violated both aspects of the section. Assuming an amendment to have been made, it asserts the School Code to be so voluminous and covers such a wide range of enactments and amendments that the title, "School Code," when used in the title to an amendment thereto, is insufficient to comply with the constitutional requirement.

Section 13 "was not intended to forbid every enactment which in any degree, however remotely, might affect prior laws on the given subject; * * *. If the act questioned is complete in itself and intelligible, showing, by itself, just what it is, it will not be held to contravene the constitutional provision in question." (*People* v. *Van Bever,* 248 Ill. 136; *People ex rel. Rusch* v. *Ladwig,* 365 Ill. 574.) A subsequent act may, in effect, amend an existing law, or may be substituted for it without violating the constitution. (*People* v. *Tokoly,* 313 Ill. 177.) In 1919 the legislature passed an act to amend an act to establish and maintain a system of free schools, (the General School Law, of which the School Code is the immediate successor,)

by adding seven new sections. The amendment permitted the organization of consolidated community school districts. In *People ex rel. School Directors* v. *Exton,* 298 Ill. 119, we held the act, although called an amendment to the General School Law, did not in fact change, reform, revive, correct or modify any provision of the General School Law. If the act should be regarded as adopting other portions of the school law, there is no constitutional objection against that. This was followed in *People* v. *Moyer,* 298 Ill. 143, where the same act was attacked on the same ground; we stated the subject of the act to be within the scope of the General School Law. In *People ex rel. City of Springfield* v. *Edmands,* 252 Ill. 108, we held the method of amending an act by adding new sections to be proper.

The enactment of House Bill 575 simply added new sections to the School Code. The reference in the title of that bill to the "School Code," in that it was adding sections thereto, was sufficient. The legislature by section 1-1 of the School Code declared the act should be known as and may be cited, "The School Code." The rules which this court follows in determining whether in a given instance the constitutional requirement has been met apply uniformly regardless of the volume, complexity or importance of the existing law. To determine if an act amends an existing act, or is a complete unit within itself which is merely added to that law, we are not governed by the title alone, or by whether it purports to be an amendment. We are governed by what we find when the contents of the new and the old acts are compared. The contention of the plaintiff of the invalidity of the community unit school district act because of antagonism to section 13 of article IV disappears when the rules set forth are applied.

Some counsel in the case are of the opinion the Community Unit School Act is so ambiguous and uncertain in its application that it cannot be anything but violative of

the due-process-of-law provisions of the State and Federal constitutions. (Sec. 2, art. II. Ill. Const.; 14th Amend. Fed. Const.) The charged deprivation is of property. Six instances are set forth, wherein, it is said, the constitutional mandates would operate. We consider them in the order arranged.

(1) The act does not provide what is to happen to the bonded indebtedness, and current obligations of districts automatically dissolved. They concede sections 19-30 and 19-31 of the School Code take care of such contingency when territory is detached from an existing school district. A school district is a quasi-municipal corporation, and analagous to any other municipal corporation created under legislative enablement laws. In *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, we considered questions arising out of the consolidation of various park districts in the Chicago Park District. The plaintiff thought, inasmuch as he was a taxpayer in a portion of the park district formerly known as the West Pullman Park District, where there was a low ratio of indebtedness to the assessed valuation, he would be subjected to a greater tax burden in order to satisfy liability on indebtedness of other superseded districts, some of which had a higher ratio of indebtedness. He believed the situation he was in violated the due-process-of-law provision of the State constitution, and the due-process-of-law and equal-protection-of-the-law clauses of the fourteenth amendment to the Federal constitution. We held, "When two or more municipalities are combined, the resulting municipal corporation includes the persons and places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. The identity of the component elements, in such cases, is lost and becomes absorbed into the new creation. [Citations] Where two or more municipal corporations are consolidated or the entire territory of one municipal corporation is annexed to another, unless the legislature otherwise provides,

the contracts and indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated or annexing corporation, and the latter is vested with the power to raise revenue wherewith to pay them by levying taxes upon the real and personal property of the persons residing therein." The above is applicable to the situation where school districts are automatically dissolved when a community unit school district is organized. The specific sections of the two constitutions have not been violated.

(2) Confusion, to the extent of impairing teachers' property rights belonging to them under the Teacher Tenure Law (Ill. Rev. Stat. 1947, chap. 122, art. 24,) is allegedly created because the Community Unit School Act does not provide what shall happen to such tenure rights. The confusion is neither apparent nor real. Under the rule stated in *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, teachers in a district wholly absorbed into a community unit school district will find their contractual rights unimpaired, for the new district stands in the place of the old one. Where a district is fractioned and a school building is lost to the community unit school district, the teacher, or teachers therein still maintain their contractual relationship with the fractioned district. The contract being property, it would be subject to adjustment between the new and the old district under section 4-47 of the School Code only in the event the board of directors of the old district did not choose to terminate the employment of the particular teacher, or teachers, under the power given to it to do so by section 24-1 of the Teacher Tenure Law. Where the power given by section 24-1 is used by the board, the particular teacher and the board are the only ones concerned. Aside from the above, a teacher has no vested right to retain a position, and thereby prevent the legislature, in the course of reorganizing the school system, from destroying or fractioning a school district. That the teachers'

statutory tenure right under that act is a tenuous one is exemplified by section 24-7: "Nothing herein limits the right of the General Assembly to amend or repeal any part of sections 24-2 to 24-7, inclusive, or any contract resulting therefrom." A legal reason for invoking constitutional protection is not established.

(3) and (4). Because the Community Unit School Act does not prohibit petitioners, residing therein, from turning around and organizing another community unit school district, which would include all or a part of the prior similar district, the act is ambiguous and uncertain in application. Also, that such tactics could be endless. From the mere utterance of the statement the court cannot assume that a state of confusion of the magnitude envisioned will bring the act within the prohibition of the constitutions. The statement is really directed against legislative policy, and with that, this court cannot concern itself. Additional confusion is alleged to be certain because the act, in the event the circumstance stated above transpires, does not say what shall become of that part of a prior community unit school district not included in the successor district. No confusion can arise therefrom, for the School Code makes ample provision for the fitting of detached, or left-over territory, into the school system of the State, either by annexation to an existing district, by the organization of an appropriate new district, or by sending the children of the territory to a school in an existing district, at public expense.

(5) More confusion is feared because the ballots for the election of members to the board of education need not carry the information regarding residence and number of board members per congressional township. Our expressed viewpoint on those items disposes of this fear. Further fear is derived from the fact that the act requires the ballot form to conform, as far as applicable, to the

ballot form prescribed in section 7-5 of the School Code. Such fear is groundless, in our opinion.

(6) Section 8-12 of the act does not state the form of the petition for the nomination of candidates for membership on the board of education to be elected at the first election following the organization of the district. It also does not say how many persons shall sign the petition, as a minimum number. No confusion can arise therefrom. It was a privilege of the legislature not to require a set form of petition or a minimum number of signers thereon. Section 7-5 of the School Code applies to board elections in districts of not fewer than 1000 and not more than 100,000 population, and the legislature may have intended the petitional requirements to apply to the first election of board members. Whether it did so intend is immaterial. Unconstitutional confusion cannot arise therefrom.

Neither a single instance, nor the sum of them, renders the act ambiguous and uncertain in application to an extent which would engender a lack of due process of law, or denial of equal protection of the law.

We now consider the points directed against the Waverly Community Unit School District No. 6 specifically. The district is said not to be compact and contiguous. All we have before us in the record as an aid in determining this question is a small-scale map of the district.

North and south, for the width of two sections, the district is 14½ miles long. Waverly being located 6½ miles from the south boundary and about 7 miles from the north one. East of Waverly the north and south distance varies from 10 miles to 3 miles, Waverly being just east of the greatest north and south distance. West of Waverly, the north and south distance west of the greatest distance noted above, varies from 2 to 6 miles. East and west, the greatest distance between boundaries is approximately 14 miles along the two tiers of sections above the

south boundary line. Elsewhere that distance varies from about 2 to 13 miles; the most common distance being 9 to 10 · miles. Waverly is somewhat to the west of the center of the district and approximately in the center, north and south. Judging from the map, access to Waverly from all parts of the district, and from one portion of the district to another, may be conveniently had over all-weather roads. Waverly is the only incorporated center of habitation in the district.

Plaintiff argues that areas in the north part of the district are considerably closer to New Berlin and Alexandria than to Waverly. Some in the southeast portion of the district are closer to Virden and 11 miles from Waverly. West of the latter place, children would only have to go ¾ of a mile to school in Franklin, whereas the distance to Waverly is 4 miles. In *People ex rel. Leighty* v. *Young,* 301 Ill. 67, cited by plaintiff, we held it was the legislative intent, when authorizing community high schools, that the people residing in a community might provide high school facilities for themselves, and not be compelled to support a school or attend one in another community, even though it might be compact and contiguous. That was pertinent to the facts of the case, against the background of the conditions of that time (1922). It is now established that a school district may constitute a community for only school purposes. (*People ex rel. Frailey* v. *McNeely,* 376 Ill. 64.) Though people of the district may go to centers without the district for purposes of business, worship or pleasure, such does not change the aspect of the community for school purposes. (*People ex rel. Bartlett* v. *Vass,* 325 Ill. 64.) The board of education may under the law transport pupils to and from school, or schools, maintained by the community unit school district. Whether a district is compact and contiguous must be determined by the application of a present day yardstick, which, of course, has been materially lengthened by the advent of more and

better all-weather roads, coupled with the increasing use of school buses for transport of pupils. The Waverly district is compact and contiguous; so section 1 of article VIII of the State constitution cannot be invoked.

Plaintiff believes the election for the organization of the district is void because the election notices therefor did not comply with the requirements of the act. Section 8-9 requires the county superintendent of schools to post notices of election. Section 8-10 places upon him the task of establishing precincts, fixing the boundaries thereof, and, when one or more cities, villages and towns are involved, he shall establish one or more voting precincts in each. He shall also establish one or more such precincts in territory outside such corporate areas.

In the Waverly district, precinct No. 1 took in all of Waverly. Precinct No. 2 took in that portion of the proposed district that lay in Sangamon County. Precinct No. 3 covered what was in Morgan County. The notices of election did not contain an exclusion clause in describing the bounds thereof in respect to precinct No. 3. It included the territory of Waverly, which is in Morgan County. No factual harm resulted, for no confusion ensued. Everyone who desired to vote in the election voted, and every voter voted in his proper precinct. The election was regular in every respect. The point is supertechnical and breeds a hypothetical issue. *People ex rel. Reich* v. *McCoy,* 387 Ill. 288, and *People ex rel. Mark* v. *Hartquist,* 311 Ill. 127, are cited by plaintiff. The issues therein were not hypothetical. This court will not take cognizance of an hypothetical issue.

Section 8-12 requires the giving of ten days' notice, by posting, of the election of members to the board of education. Nominating petitions for such positions must be filed with the county superintendent, who must post the notices ten days in advance of the election. Here, the county superintendent on August 16 declared the result of the

election on the proposition to organize the district. On the same day he set the election for board members on August 26. The nominating petitions for the seven defendant members were filed on August 16, the last day for such a deed, and also the first day for such. No other petitions were filed, and the record discloses no one was prevented from filing a petition or petitions. Plaintiff believes other petitions could only have been filed, under the circumstances, in the event there was beforehand knowledge when the election was to be called. The county superintendent is accused of an abuse of his discretion. That official fully complied with the statutory requirements. What he did was clearly within the language and the intent of the statute. No harm whatever resulted from his action, and we regard the point as being without basis.

The election for members of the board of education is claimed to be illegal because the county superintendent only provided one polling place therefor, the whole district being denominated a single precinct. Again, the record is bare of any showing of evil results flowing from such action. Section 8-12 of the act instructs the county superintendent to provide one or more polling places for such election. His action did not operate to deny anyone of his right of voting insofar as the record shows. This point is also without any basis.

The petition for the calling of an election on the proposition to organize the district was never submitted to the appropriate survey committee, or committees. Plaintiff said this was vitally necessary, for it was a required action.

House Bill 575 (the Community Unit School District Act,) was passed, and the enacted bill was signed by the Governor on July 21, 1947. House Bill No. 340, being an amendment to the School Survey and Reorganization Act, passed, and was signed by the Governor on August 8, 1947. This amendment (Ill. Rev. Stat. 1947, chap. 122, par. 729,) to section 16 of the act provided: "Notwith-

standing any other provision of the School Code, no petition shall be filed or other proceedings had for a change in the boundaries of any school district in a county or partly in a county where a County Survey Committee has been elected in accordance with the provisions of this act, unless said petition for change is presented to said County Survey Committee or Committees, in writing, at a meeting held to consider said change. * * *."

On July 31, 1947, the petition for the election to vote upon the proposition whether the Waverly district should be organized was filed with the county superintendent. August 1, 1947, he ordered the election to be held August 14, 1947. Notices of the election were posted by him on August 4, 1947. The county superintendent did not submit the petition to the school survey committee of either Sangamon or Morgan counties. When the petition was filed with him House Bill 340 was not a law.

Since the two bills were enacted during the same legislative session and have a common subject matter, according to plaintiff, they must be construed together. Unless they are irreconcilably repugnant, he believes both must be applied to the facts here; citing *People ex rel. Bothfuhr* v. *Chicago and Eastern Illinois Railway Co.* 305 Ill. 454; *People ex rel. Carnine* v. *Illinois Central Railroad Co.* 337 Ill. 276. The first case states the above rule and this court correctly applied the rule to the facts of that case. The facts in the case before us are so dissimilar to those of the cited case, we cannot apply the rule here. In *Illinois Central Railroad Co.* v. *Commerce Com.* 387 Ill. 256, we do find a factual situation analagous to the one before us. An issue arose over the necessity of giving notice to the Federal Emergency Price Administrator as required by the October 2, 1942, amendment to the Emergency Price Control Act. Proceedings for a rate increase were initiated before the State Commerce Commission in February, 1942, and all notices required by the act prior to the

amendment were given. Hearings were concluded in May, 1942, and we held the jurisdiction of the commission to have been lawfully invoked according to the statute upon giving proper notice. The jurisdiction of the commission, and the proceeding before it, could not be affected by the failure to give notice to some other party, who was not entitled to notice when the proceeding was initiated.

All the county superintendent did in receiving the petition, and ordering the election by posting notices thereof, was in accord with the provisions of the Community Unit School Act. When he did the above, no law required him to submit the petition to the survey committee or committees. He possessed jurisdiction over the petitional matter and was clothed with the power and authority to act thereon in accordance with the statute.

The amendment to the School Survey and Reorganization Act did not contain any language whatever, let alone clear, express or unequivocal language, stating the amendment shall be retroactive. Such language is necessary. *New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316; *People* v. *Panczko*, 390 Ill. 398.

Lastly, our attention is directed to section 20 of article II of the State constitution: "A frequent recurrence to the fundamental principles of civil government is absolutely necessary to preserve the blessings of liberty." This court is ever mindful of that admonition. In this case we have adhered to the fundamental principle of the three main grand divisions of government, the legislative, the administrative and the judicial, by refusing to intrude into the legislative area and undertake to say what is a thorough and efficient system of free schools for the common schooling of all the children of the State.

The argument presented under this point stresses the inability of all the voters of a school district, intended for loss of some territory, to vote on the question of the organization of the community unit school district.

Such is said to be an impairment of their liberties, *i.e.,* the use and enjoyment of an existing, excellent school system. That use and enjoyment, when regarded as a liberty, presupposes the existence of a right, either created, or guaranteed by, the State constitution. Elsewhere in this opinion we have shown the utter absence, under the constitution, of any right in a particular segment of the population to the continued enjoyment of a particular school system, contrary to the will of the legislature. The people of the State have given to the legislature all power over the public schools and school system, subject only to the two limitations in section 1 of article VIII.

The judgment of the circuit court of Morgan County sustaining the validity of the Community Unit School Act against the specific constitutional attacks considered, and sustaining the validity of the organization of the Waverly Community Unit School District No. 6 thereunder, is affirmed.

*Judgment affirmed.*