**Earl Hatfield, et al., v. Leslie Stilley, County Superintendent of Schools, Williamson County, et al., Defendants-Appellees.**

**Gen. No. 63–F–1.**

Fourth District.

May 6, 1963.

Rehearing denied May 27, 1963.

James W. Sanders, of Marion, for appellant.

Carl D. Sneed, State's Attorney, of Williamson County, Marion, for appellees.

SCHEINEMAN, P. J.

Pursuant to Section 11–6 of the School Code, c 122, Ill Rev Stats, a petition was filed with the County Superintendent of Schools of Williamson County, to call an election for the purpose of creating a Community Unit School District. The petition was granted, an administrative review followed wherein the granting of the petition was affirmed, and this appeal was

taken by some of the individuals and grade school districts involved.

The technical sufficiency of the petition is not questioned, but it is contended that the proposed unit district does not meet the requirements of the law, and is otherwise not for the best interests of certain school children.

The Herrin Township High School District No. 201 includes within its boundaries, the Herrin grade school district and six other grade school districts which surround Herrin. The proposed unit district would include the Herrin grade school district (where the high school is also located) and 90 acres of Sunnyside School District No. 30, one of the appellants.

The evidence at the hearing established that the proposed unit would be compact and contiguous, and accessible. No student would reside more than 1½ miles from the high school. Operating under one board instead of two would promote efficiency and economy, provide better coordination through the 12 grades. The new district would realize a substantial increase in State Aid, thereby making possible additional services for students, and better paid and better trained teachers.

It was further shown that there are about 2000 children of school age in the present high school district, of these about 1800 would be in the proposed unit district, leaving only 200 in the surrounding area.

 From an examination of the testimony, this court finds that, at least as to the 1800 students in the proposed district, its creation is definitely beneficial to them. Whether the others obtain the same benefits depends upon whether they would attend the high school in the new district, or choose to go elsewhere. There are substantial advantages in having 12 grades with a unified curriculum, rather than having

high school entrants coming from seven different curricula, of varying degrees of efficiency.

The objectors who testified opposed the project because they would not be voting on it, and that it would create uncertainty. None specified any particular detriment to the other children, and apparently some did not realize they would still be able to send their children to high school at public expense. There was also the objection that the present building had been constructed with funds from all the territory in the present high school district.

As to the latter point, it is undisputed that, upon formation of the new district, the building in question would be appraised and the districts not included would be reimbursed for their proportionate share of ownership in the building. Moreover, it is the law that all school facilities are the property of the State, subject to the will of the legislature in carrying out school policies. People v. Camargo Community Consol. School District, 313 Ill 321, 145 NE 154; People v. Deatherage, 401 Ill 25, 81 NE2d 581. The latter case also holds that the mere fact of a district being fractioned when a unit district is created, does not ipso facto establish that the emasculated district lacks efficiency and thoroughness.

The alleged uncertainty will be readily obviated. The School Code makes ample provision for the fitting of detached or left over territory, into the school system, either by annexation to an existing district, by the organization of an appropriate new district, or by sending children of the territory to a school in an existing district, at public expense. People v. Deatherage, 401 Ill 25, 81 NE2d 581; People v. Drummet, 415 Ill 411, 114 NE2d 364.

The point that citizens outside the proposed district would not be permitted to vote on it has no merit. This point was urged as a constitutional objec-

tion to school law. The Supreme Court held the law is constitutional, and said in part: "no resident of a school district has an inherent right of franchise insofar as school elections are concerned. . . . The residential standard to be met for voting on the proposition of organizing a community unit school district is: only those residing in the territory described in the petition for submitting the proposition may vote in the election." People v. Deatherage, 401 Ill 25, 81 NE2d 581.

■ Finally, it is argued that Article 7 of the School Code must be construed with Article 11, with particular reference to the prohibition of detachments that would leave nonhigh school territories, etc., as stated in Section 7–4. No precedents are cited in support of this construction.

The two articles involve two different situations. Article 7 pertains to detachment and attachment of territory in existing districts. Article 11 pertains only to the organization of *new* unit districts. The advantages and benefits to be obtained by placing 12 or more grades under one management have been recognized in many reported decisions involving unit districts. The principles announced in many cases as controlling, including some of the citations in this opinion, would be nullified if the provisions of Section 7–4 were applied to Article 11. It must be presumed that the omission of these restrictions from Article 11 was intentional on the part of the legislature, and this court will not insert by construction limitations and restrictions which the legislature has seen fit to omit.

For the reasons given, the judgment is affirmed.

Judgment affirmed.

CULBERTSON and HOFFMAN, JJ., concur.