(No. 32701.—

THE PEOPLE *ex rel.* Harland D. Warren, State's Attorney, Appellee, vs. RALPH DRUMMET *et al.,* Appellants.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

Berry & O'Conor, of Streator, for appellants.

Harland D. Warren, State's Attorney, of Ottawa, and McNeilly & Ryan, of Peru, for appellee.

Harold W. Norman, and Allyn J. Franke, both of Chicago, *amici curiae.*

Mr. Chief Justice Schaefer delivered the opinion of the court:

This *quo warranto* action, instituted in the circuit court of La Salle County by the People on the relation of the State's Attorney of that county, challenges the valid existence of Wenona Community Unit School District No. 1 of La Salle and Marshall Counties, (hereafter, "Wenona District.") The defendants, members of the board of education of the district, answered the complaint, setting forth in detail the steps taken to organize the district and asserting an affirmative defense of *laches*. A reply was filed, the case was tried, and a judgment of ouster was entered. De-

fendants prosecute this direct appeal, a franchise being involved.

The contention that the initiating petition for the election at which the district was created failed to contain the signatures of one hundred legal voters residing in the territory, as required by section 8-9 of the School Code (Ill. Rev. Stat. 1947, chap. 122, par. 8-9,) does not require detailed discussion. We have considered the evidence upon the basis of which the trial judge found that the petition was signed by 106 qualified voters residing within the proposed district. The evidence amply supports that finding.

The principal issue under the statute is whether the territory described in the petition was contiguous and compact for school purposes, within the contemplation of section 8-9 of the School Code, under which the district was organized. Plaintiff maintains that this territory was not a "natural school community," compact and contiguous for school purposes, that the new district invaded the natural school community of the existing Rutland High School District No. 340J and Rutland Common School District No. 100J, and that the organization of the district in effect deprived some children of an opportunity to receive a good common-school education, in violation of the command of section 1 of article VIII of our constitution. From the opinion of the circuit court it appears that the judgment was based upon a finding that the existing Rutland school districts, and especially the high school district, constituted "a community for school purposes which must be respected by other neighboring communities."

The territory of the Wenona District includes 87 sections of land. The district measures twelve miles east and west at the widest, or northerly, part, and it is nine and one-half miles in length, from north to south, at the longest point. The city of Wenona, the only incorporated city or village in the district, has a population of 1005. It lies three and one-half miles south of the north boundary of the dis-

trict, six miles north of its south boundary, and about mid-
way between the east and west boundaries at their widest
points. The high school and the principal grade school
operated by the district are located in Wenona and have
enrollments of about 121 and 164 students, respectively.
During the first year of its existence, the district also oper-
ated two rural schools in La Salle County. Five buses are
maintained to transport students to and from school, and
a one-way trip does not exceed fifty minutes in duration ·
for any student.

The rub in this case comes from the effect of the forma-
tion of the Wenona District, and two other new community
unit districts, upon Rutland High School District No. 340J
and Rutland Common School District No. 100J of La Salle
and Marshall Counties. These districts operated a four-
year high school and an eighth-grade elementary school, re-
spectively, in Rutland, a village of 486 inhabitants, located
near the southern edge of the proposed Wenona District.
At the time the Wenona District was being formed, two
other community unit school districts were being organized
to the south and west of the Wenona District. Each of the
three new community unit districts included portions of
the Rutland districts. A somewhat detailed explanation is
necessary for an understanding of the situation.

Rutland High School District No. 340J consisted of
$28^{11}\!/_{16}$ sections in Groveland Township, La Salle County,
and Bennington Township, Marshall County. On October
30, 1948, an election was held establishing Community Unit
School District No. 108 of Woodford County to the south
of Rutland. As the result of this election $11\frac{2}{3}$ sections
which had been a part of the Rutland High School District
were disconnected and became a part of the Community
Unit District No. 108. The northern boundary of this dis-
trict was about half a mile south of the village of Rutland.
On January 22, 1949, the day on which the election estab-
lishing the Wenona District was held, Community Unit

School District No. 2 of Marshall County to the west of Rutland was established by election. By this election $\frac{15}{16}$ of a section was disconnected from the Rutland High School District and became a part of Community Unit District No. 2. The eastern boundary of this district was one mile from the village of Rutland. By the election of January 22, 1949, establishing the Wenona District, 14 more sections were disconnected from the Rutland High School District leaving it with an area of $2\frac{1}{12}$ sections, or, as the parties state it, two sections.

Prior to October 30, 1948, Rutland Common School District No. 100J consisted of $8\frac{7}{16}$ sections of land located in Groveland Township, La Salle County, and Bennington Township, Marshall County. By the election of October 30, 1948, establishing Community Unit District No. 108 of Woodford County, one section was disconnected from the Rutland Common School District and became a part of District No. 108. By the election of January 22, 1949, establishing Community School District No. 2 of Marshall County, $\frac{11}{16}$ of a section was disconnected from the Rutland Common School District and became a part of District No. 2. And by the election of January 22, 1949, establishing the Wenona Community District, $4\frac{3}{4}$ sections were disconnected from the Rutland Common School District and became a part of the Wenona District, leaving it as an area of two sections.

Each of the three new community unit school districts thus took a portion of the two Rutland districts, leaving the Rutland Common and Rutland High School districts with but two sections of land and their school buildings. The assessed valuation and the population of the two Rutland districts, already below the minimums declared by statute to be essential for a new high school district, were brought even further below minimum requirements.

As a result of these several elections, and the three disconnections, two sections of land were left as a small

island, bounded on the east, north and west by the Wenona District and, on the south by Community Unit District 108 of Woodford County. The village of Rutland, which was not included in any of the new districts, lay north of the southernmost portions of the Wenona District, which extended south for two miles on either side of it. When the Wenona District was originally formed, the school building of the Rutland districts, located in Rutland, was only about a block and one-half from the boundary line of the Wenona District although the boundary line has since been moved, and in September, 1949, was about two miles north of the Rutland school building.

To complete the picture, in August, 1949, by an appropriate proceeding, $7\frac{1}{2}$ sections in Groveland Township, La Salle County, and Bennington Township, Marshall County, were detached from the Wenona District and again became a part of the Rutland school districts. There were additional later changes in the boundaries of the Wenona District which do not require description. The net result was that when the new Wenona District started to operate its schools in September of 1949, the total area of Rutland Districts 340J and 100J was $9\frac{7}{12}$ and $9\frac{1}{2}$ sections, respectively.

The impact of the changes resulting from the creation of the three new community unit districts upon the Rutland school districts was serious. Prior to the organization of the community unit school districts, there were fifty-one persons of high school age living in the territory of the Rutland High School District. There were 24 high school students living in the two sections of land remaining in that district after the reorganization. For the lack of funds this district did not operate a high school during the school year 1949-50. The students attended the three community unit districts surrounding Rutland. The 75 elementary school students living in the two sections of land remaining in the Rutland Common School District continued to attend

the school in that district, but the money received from taxes and other sources was insufficient to pay their teachers. Individuals in the community cashed the teachers' orders and held them until a later date when sufficient funds would be received by the district. The Rutland High School District retained only 17.1 per cent of its original assessed valuation, and the Rutland Common School District retained only 48.3 per cent of its assessed valuation.

Plaintiff argues that the evidence is insufficient to show that the territory which was formerly a part of the Rutland districts forms a part of the "natural school community" of the Wenona District. It is urged that this territory is in fact a part of the Rutland community, separate and distinct from the Wenona community. This argument, with its emphasis upon the inviolability of existing school districts, loses sight of the purpose of the General Assembly in revising the school laws. It is common knowledge that prior to the legislative changes of 1945 and 1947, Illinois had an extremely poor school organization, with nearly 12,000 school districts, almost 10,000 of which operated one-room schools. (Report No. 86 of the Illinois Legislative Council.) It was to meet this situation and to make possible a more effective scheme of organization that the 1947 legislation, under which this case arises, was adopted. The purpose of that legislation was to provide the means by which existing school district boundaries could be altered, and a more efficient system of schools provided.

The School Code as amended in 1947 reflects that purpose. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-9 to 8-14.) The only restriction with respect to the territory to be included in the new "community unit school district," which was provided for by the 1947 legislation, was that the territory be contiguous and compact. Section 8-12 reflects legislative recognition of the likelihood that school districts to be organized under the statute might well be of substantial size by providing for geographical representation

on the boards of education of districts exceeding 72 square miles in area. That it was contemplated that more than one city, village, or incorporated town might be included within the boundaries of a new community unit district is clear from section 8-10 which makes provision for establishing separate voting precincts "if one or more cities, villages or incorporated towns is or are located within such territory." Section 8-13 anticipated that a community unit school district might include several elementary and high school districts when it specifically provided that all such districts wholly included within the new district should be automatically dissolved, and "If there is included within the territory so reorganized a part or parts of elementary districts or high school districts, said part or parts shall automatically be detached from such district or districts and become a part of said community unit school district." Section 8-14 provides for the detachment of territory from adjoining school districts and annexation to a community unit school district. When the entire statute is considered, the legislative intent is clear that a community unit school district established under its provisions might include existing school districts, and parts of existing school districts, as well as separate municipalities which, for many purposes, would be deemed distinct communities.

*People ex rel. Snowden* v. *Hurst,* 401 Ill. 158, cited by the trial court in its opinion and relied upon by plaintiff, must be limited to the unique factual situation there presented. And apart from its extreme facts, *People* v. *Hurst* was decided under a different law. The statute here involved deliberately provides for the formation of new districts which would invade the territory of existing districts, —which were presumably different natural school communities, as the term is employed in *People* v. *Hurst.* An unmistakable purpose of the statute was to sanction the organization of school districts formed by combining previously existing districts and parts of districts to the end

of reduction in the number of school districts and the formation of larger school districts designed to promote more effective and more economical education. To hold that under the present School Code a school district can comprise only what has formerly been regarded as a single school community would frustrate the objectives of the statute.

In our opinion the argument that the territory formerly a part of the Rutland districts constitutes a natural school community, which must be regarded as separate and distinct from the Wenona community, for community unit school district purposes, is untenable. The present statute not only approves invasion of the territory of existing districts when new districts are being formed but spells out that intent and provides adequate machinery for adjusting the boundaries of a new community unit school district if it fails to include territory which should have been included or if it takes territory which should have been excluded.

The issue, under the present statute, is whether the territory of the new district is contiguous and is sufficiently compact in size to enable the children residing in the district to avail themselves of the privileges of the school in Wenona without undue inconvenience. The statutory command that the territory be contiguous and compact does not admit of an all-inclusive definition drawing hard-and-fast lines. As said in *People ex rel. Leighty* v. *Young,* 301 Ill. 67, "It is impossible, of course, to give a definition of the terms 'community,' 'compact' and 'contiguous,' when applied to school districts, that will apply under all circumstances." And, more recently, "The territory of a school district is compact and contiguous when it is so closely united and so nearly adjacent to the school building that all the students residing in the district, their ages considered, may conveniently travel from their homes to the school building and return the same day in a reasonable

time and with a reasonable degree of comfort. [Citations] The territory need not be rectangular or square to be contiguous and compact. Again, every reasonable presumption is indulged in favor of the validity of a school district established pursuant to legislative authority. Conversely, a school district will not be held invalid for lack of contiguity or compactness unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school." (*People ex rel. McLain* v. *Gardner,* 408 Ill. 228.) *People* v. *Deatherage,* 401 Ill. 25, is to the same effect. The requirements of compactness and contiguity have been satisfied in this case.

Plaintiff argues further that if the territory taken is part of the Wenona school community, the two sections omitted should also have been included. It is pointed out that children in the two omitted sections reside as much as 5½ miles closer to the attendance center in Wenona than do children living in other parts of the territory included. The substance of this argument seems to be not that the territory included belongs to a different school community, but rather that territory excluded belongs to the newly created school unit. The statute speaks, however, of inclusion rather than exclusion. The issue is whether the territory described in the petition seeking organization of a new community unit school district is contiguous and compact, and whether children residing within the territorial boundaries are afforded the opportunity of traveling to and from school in a reasonable time and with reasonable comfort. If the territory included in the district is contiguous and compact, objections that the district could have been formed in a better and different manner are not open to consideration. The fact that territory is excluded which might have been included, destroys neither the contiguity nor the compactness of the unit district.

Plaintiff also directs attention to the fact that the Rutland districts were left with assessed valuations too low to enable them either to maintain a school or to pay tuition based upon the *per capita* cost of education elsewhere. On that basis it is contended that the children residing within such districts are deprived of the right to receive the free education guaranteed by section 1 of article VIII of our constitution. This contention lacks merit. Adequate provisions are included in the School Code whereby the objection can readily be obviated. The statute provides machinery for the attachment of territory or the annexation of a common school district to a community unit school district. On the other hand, territory included in the new community unit districts could be annexed to the Rutland districts. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-6, 8-14.) Indeed, this was done as to 7½ sections. It may well be that the residents of the former Rutland districts did not desire reannexation. The record supports the inference that the two sections of land including and surrounding the village of Rutland were left out of each of the three petitions for the formation of community unit school districts in late 1948 and early 1949 in order to afford the residents of those two sections an opportunity to decide which of the three new districts they desired to join. Perfection cannot always be achieved in the initial proceedings incident to the formation of new school districts. Adjustments become necessary, and statutory provision is made for them. As was observed in the *Deatherage case,* (401 Ill. 25,) "* * * the School Code makes ample provision for the fitting of detached, or left-over territory, into the school system of the State, either by annexation to an existing district, by the organization of an appropriate new district, or by sending the children of the territory to a school in an existing district, at public expense." See, also, *People ex rel. McLain* v. *Gardner,* 408 Ill. 228, 236-237.

Our conclusion that there has been full compliance with the relevant requirements of the School Code renders unnecessary a consideration of the contention that plaintiff's action was barred by *laches*.

The judgment of the circuit court of La Salle County is reversed and the cause remanded, with directions to dismiss the complaint and to enter judgment in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*