(No. 33089.—

THE PEOPLE *ex rel.* James Dixon *et al.,* Appellants, *vs.* COMMUNITY UNIT SCHOOL DISTRICT No. 3 *et al.,* Appellees.

*Opinion filed March 17, 1954.*

CHARLES W. PHILLIPS, State's Attorney, of Ridgway, (BARTLEY, KARBER & HALE, of Shawneetown, of counsel,) for appellants.

PYLE & McCALLISTER, of Carmi, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from the circuit court of Gallatin County in a proceeding in *quo warranto* challenging the legality of the annexation of certain territory out of Omaha Community Consolidated School District No. 4 in Gallatin County to Community Unit School District No. 3 of White and Hamilton Counties, known herein as the Norris City School District. The trial court dismissed the complaint and entered judgment against the plaintiffs for costs. Plaintiffs prosecute this direct appeal, the constitutionality of a statute and a franchise being involved.

Community Consolidated School District No. 4 in Gallatin County was organized under section 8-1 of article 8 of the School Code as the same existed in the year 1949. (Ill. Rev. Stat. 1951, chap. 122, par. 8-1; Jones Ann. Stat. 123.850.) The district was formed by a consolidation of common school districts Nos. 5, 6, 7, 8, and 102 of Gallatin County.

One of the defendants, the Norris City School District, was established as a unit school district under the authority of section 8-9 of article 8 of the School Code. (Ill. Rev. Stat. 1953, chap. 122, par. 8-9.) The legality of the organization of the Norris City School District was admitted.

On March 9, 1953, the proper number of legal voters residing in the Norris City School District had, in the area to be annexed in Gallatin County, filed a petition with the county superintendent of schools of the County of White asking that certain described territory be detached from Community Consolidated District No. 4 and annexed to the Norris City School District. That territory consisted of all of several sections and parts of several other sections of Township 7 South, Range 8 East of the 3rd P.M., in Gallatin County, Illinois, including "the E/2, and the N/2 of the NW/4 of Section 27, * * *."

The county superintendent of schools of White County called the election pursuant to the petition, and fixed two precincts and two polling places for holding the same. Precinct No. 1 consisted of all the territory sought to be annexed, and the town hall in the village of Omaha was fixed as the polling place therefor. Precinct No. 2 consisted of all that territory then comprising the Norris City School District, and the polling place designated was the high school building in Norris City. The proposition for annexation carried in both precincts, the results were certified by the county superintendent of schools of White County, and he ordered the territory detached from Community Consolidated School District No. 4 and annexed to the Norris City School District.

The People by relators, who are residents and owners of property within the annexed territory, filed a complaint in *quo warranto* in the circuit court of Gallatin County on July 1, 1953, by the State's Attorney of Gallatin County. Count I of said complaint averred that the Norris City School District was exercising the governmental functions and franchises of a legally organized school district over the purportedly annexed territory without any warrant, charter, grant, right or authority of law whatever and prayed that said school district be made to answer by what warrant or authority they exercise said authority, func-

tions, and governmental powers over such territory. Count II of said complaint averred that the board of education of the Norris City School District was exercising the same powers over the said territory without right of authority and prayed said board be made to answer what warrant or authority they claim to have to exercise such authority, functions, and powers over said territory.

Defendants answered averring they exercised authority over said territory by virtue of an election held on March 23,.1953, annexing said territory to the Norris City School District in full compliance with the laws of the State of Illinois relating thereto.

The People replied, denying each and every allegation of the answer, and set up seven affirmative defenses: (1) That the territory attempted to be annexed to the Norris City School District consisted of a part of a former common school district which would leave the remaining part of Community Consolidated School District No. 4 not compact or contiguous; (2) the only school house of said district No. 4 is located on territory attempted to be annexed; (3) that said school house is of the value of $25,000 and said annexation, if legal, would leave said District No. 4 without a school house; (4) the assessed valuation of property in District No. 4 would be so reduced by the attempted annexation as to render said district financially unable to construct a new school house and operate a school; (5) it will be impossible for the children in the annexed territory to attend the school at Norris City where the high school building of said district is located by reason of the distances being too great and the impossibility of furnishing transportation, the roads being insufficient for bus travel; (6) article 4B, and section 4B-6 particularly, violates section 2 of article II of the constitution of this State in that it fails to provide compensation for property taken or for division of property and assets of school districts from which territory is

taken; and (7) by said annexation, the Norris City School District becomes so large that it will not be reasonably possible for children abiding therein to attend the high school in Norris City, Illinois.

Defendants moved to strike the affirmative defenses urged by the People. The motion was sustained as to paragraphs 2, 3, 4, 5 and 7 of the affirmative defenses but overruled as to paragraphs 1 and 6 since it appeared they might be defenses.

The cause was heard by the court on September 17, 1953. On the trial defendants put in evidence the petition filed with the superintendent of schools calling the election, designating the precincts and appointing judges and clerks to hold the election, notice of the election with proof of publication of the same in the *Ridgeway News,* and the *Norris City News,* specimen ballots used in both precincts, the pollbooks and tally sheets of both precincts, the certificate of the canvass of the election returns by the superintendent of schools proclaiming the result thereof, a copy of the map of the annexed territory, proof of the filing of the same in the office of the county clerks of each of the counties of White, Hamilton and Gallatin, and also proof of filing copies of such map with the superintendents of schools of each of the counties of Hamilton and Gallatin. The court rendered judgment in favor of the defendants, dismissing the complaint and giving judgment against the relators for costs. From that judgment the People prosecute this appeal.

The People first object that persons not living within the territory described to be annexed were permitted to vote, and that the polling place designated for precinct 1 was located outside of the precinct as described in the petition. Specifically the relators object that part of the description contained in the petition was "the E/2, and the N/2 of the NW/4 of Section 27." The People assert that such description describes the east one-half of the

northwest quarter of section 27 and the north one-half of the northwest quarter of section 27, while those people residing in the east one-half of section 27 were permitted to vote and the polling place was located in the east half of section 27, all of which area was not included within the territory described in the petition that was to be annexed to the Norris City School District.

Defendants in answer assert that the above questioned description describes the east one-half of section 27 and the north one-half of the northwest quarter of section 27.

To interpret the description as plaintiffs demand is beyond reason. Such interpretation divides a quarter section on a north-south line and describes the east half thereof, then it divides the same quarter section on an east-west line and describes the north half thereof, both descriptions embracing the northeast quarter of this same quarter section. The language "E/2" in the description, followed as it is by a comma, is as logically antecedent to "Section 27," as "N/2" is to the "NW/4 of Section 27." Such an interpretation involves no overlapping and is in entire accord with reason and usage.

Moreover, the expression "E/2," is followed by a conjunction "and" connecting the description "N/2 of the NW/4." The word "and" has been defined in our courts as meaning "in addition to." (*City of LaSalle* v. *Kostka*, 190 Ill. 130.) It is something in addition to or beyond that which has gone before. Consequently the description "N/2 of the NW/4 of Section 27" indicates a description of something more, different, and in addition to the "E/2" and cannot be construed as again describing, even in part, the same thing. We are left then with only one logical and reasonable interpretation of the language in question. The words "the E/2, and the N/2 of the NW/4 of Section 27" mean the east one-half of section 27 and the north one-half of the northwest quarter of section 27. Thus the polling place was located within the area to be

annexed and the designated precinct 1, and those persons who reside in the east half of section 27 were lawful voters in the election to determine the annexation.

There is no evidence in the record that the description complained of was so ambiguous and uncertain that the voters were confused. The election being held within the area described and only those people who resided within the district being permitted to vote, the election was not void for the reasons advanced by plaintiffs.

The People secondly contend that the territory remaining in Community Consolidated School District No. 4 after the purported annexation was no longer compact and contiguous for the reason that it could not have been organized in the first instance as it is now bounded. A second reason assigned by plaintiffs is that the remaining district is connected only by the southeast corner of the southeast quarter of section 35 in township 7 south, range 8 east and the northwest corner of the northwest quarter of section 1 in township 8 south, range 8 east, forming no common contiguous boundary.

It is undisputed that this change of boundaries effecting an annexation was instituted under section 4B-6 of the School Code. (Ill. Rev. Stat. 1951, chap. 122, par. 4B-6; Jones Ann. Stat. 123.754B(6).) Nothing contained in that section or any other section referring thereto requires that the area remaining in a district after a part thereof has been annexed to another district shall be compact and contiguous.

It is likewise undisputed that Community Consolidated School District No. 4 was organized in 1949 under article 8 of the School Code, (Ill. Rev. Stat. 1953, chap. 122, pars. 8-1 *et seq.,*) which provides that such districts may be organized only of entire common school districts and be bounded by school district lines. This court has held that territory may only be detached from such a district if that territory to be detached comprises an entire common

school district. (*People ex rel. Verlie* v. *Madison,* 317 Ill. 477.) Section 4B-6 of the School Code provides that the boundaries of school districts may be changed by the vote of the citizens (1) by detaching a former common school district from a community consolidated school district or from a community unit school district, or (2) by detaching any portion of the school district or school districts contiguous and adjacent to a community unit school district and annexing such territory to the community unit school district. The plaintiffs contend that in enacting this statute the legislature must have had article 8 of the School Code in mind providing for the organization of school districts by consolidating common school districts and was presumed to know this court's holdings that only a complete common school district could be detached therefrom. They argue that any other construction of section 4B-6 would be void and invalid, since it would permit the boundaries of a community school district to be changed in such a manner as to violate the statute under which it was formed. There is no merit to plaintiffs' argument on this point. It is axiomatic that the later statute in time is controlling, and section 4B-6 of the School Code was enacted subsequent to article 8. Moreover, we do not feel that section 4B-6 has effected any change. Section 4B-6(1) still provides that when any area is to be detached from a community consolidated school district, not to be then annexed to another district, the detached area be comprised of a full former common school district. That is just what the statutes and case law have previously required.

We are not here concerned with the formation of a community consolidated school district. Such action still requires that such a district when formed be comprised of entire common school districts. We are concerned with the detachment of territory therefrom and an annexation of such territory to an adjoining community unit district. No law requires that when such a thing is accomplished the

remaining area of a community consolidated district be composed of entire former common school districts. No authority has been urged upon this court holding that where territory is detached from a community consolidated district and annexed to an adjoining school district the remaining area of the community district must be composed of entire former common school districts. No repugnancy of statutes is evident nor is any invalidity apparent.

In discussing the meaning of the terms "compact and contiguous" as applied to school districts we recently stated in *People ex rel. Warren* v. *Drummet,* 415 Ill. 411, "The statutory command that the territory be contiguous and compact does not admit of an all-inclusive definition drawing hard and fast lines. As said in *People ex rel. Leighty* v. *Young,* 301 Ill. 67, 'It is impossible, of course, to give a definition of the terms "community," "compact," and "contiguous," when applied to school districts, that will apply under all circumstances.' And, more recently, 'The territory of a school district is compact and contiguous when it is so closely united and so nearly adjacent to the school building that all the students residing in the district, their ages considered, may conveniently travel from their homes to the school building and return the same day in a reasonable time and with a reasonable degree of comfort. [Citations.] The territory need not be rectangular or square to be contiguous and compact. Again, every reasonable presumption is indulged in favor of the validity of a school district established pursuant to legislative authority. Conversely, a school district will not be held invalid for lack of contiguity or compactness unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school.' [Citations.]"

The People argue further that the remaining area of Community Consolidated School District No. 4 is so situated that in one place the district is connected only by the

southeast corner of one section and the northwest corner of another geographical section. We have determined that the legislature did not intend that consolidated districts might exist with parts of their territory entirely separated from the rest of the district. Hence territory cannot be so detached from community consolidated school districts as to leave the remaining territory of such school districts in separate bodies or not contiguous. (*People ex rel. Taylor v. Camargo Community Consolidated School Dist.* 313 Ill. 321.) Defendants, in answer, assert that the northeast quarter of section 2, township 8 south, range 8 east was a part of the Bruce Common School District No. 6 consolidated into the Community Consolidated District No. 4 and remains a part of that district. That quarter section would connect the east part of the remaining territory with the west part thereof and render the entire territory contiguous.

Horace G. Brown, county superintendent of schools of Gallatin County, testified that the only record in his office showing the boundary of Bruce district No. 6 was a certain map which indicated that the northeast quarter of section 2, township 8 south, range 8 east, was not a part of district 6 but a part of district 18. He did further testify, however, that he believed that subsequent to the consolidation of district 6 into the Community Consolidated School District No. 4 the taxes from this quarter section were paid to the consolidated district No. 4 and prior thereto had been paid to district No. 6. The deputy county clerk of Gallatin County, Noble Pearce, testified that a map in the county clerk's office failed to indicate the boundaries of Bruce district No. 6, but that the assessor's books credited the disputed quarter section to school district No. 6. The taxes on that area since 1948 had been paid to Community Consolidated School District No. 4, and prior thereto, as far back as the early 1920's, were paid to district No. 6.

William Rister, county treasurer and collector of Gallatin County testified that the collector's books show that for the years 1910, 1923 to 1932, incl., 1934 to 1939, incl., 1942, 1943, 1944, 1946, and 1947, the taxes for the disputed quarter section were paid to district No. 6, and for the years 1948, 1949, 1950, and 1951 were paid to the Community Consolidated School District No. 4.

The evidence presented by the record thus indicates quite clearly that the disputed quarter section was a part of former common school district No. 6 and remains a part of Community Consolidated School District No. 4 of Gallatin County. Nothing in the record indicates that the children residing in the remaining territory in Community Consolidated School District No. 4 will be unable reasonably to avail themselves of the privileges of a school. Certainly if they could reasonably avail themselves of school privileges before the detachment, they can continue to do so. The requirements of compactness and contiguity are satisfied by the territory remaining.

The People next urge that the School Code, in omitting to provide for a division of assets between the annexing school district and the remaining unannexed area, has so confused the law as to make at least section 4B-6 invalid and unconstitutional and in violation of section 2 of article II of our State constitution, and so ambiguous, uncertain and incomplete that it should be held unconstitutional. It is provided in section 2 of article II of the constitution of the State of Illinois that "No person shall be deprived of life, liberty or property, without due process of law." Any school district established under enabling legislation is entirely subject to the will of the legislature thereafter. With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. The State may hold or manage the

facilities directly or indirectly. The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature. The "property of the school district" is a phrase which is misleading. The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject to the legislative will. A school district has no such property right of which it might be deprived in violation of section 2 of article II of the State constitution. (*People* v. *Deatherage,* 401 Ill. 25.) Section 4B-6 provides a complete, clear, and certain procedure for detaching territory from any school district and annexing it to an existing adjacent community unit school district. The constitutional objection urged by plaintiffs is not well taken.

Finally plaintiffs contend that the trial court erred in striking affirmative defenses 2, 3, 4, 5, and 7 from the pleadings, depriving plaintiffs of the right to introduce evidence to support the affirmative defenses urged.

By their second affirmative defense the People assert that the only school house of district No. 4 is located in the area sought to be disannexed from that district. The third affirmative defense asserts the said school house is of the value of $25,000, and said annexation, if legal, would leave district No. 4 without a school house. These allegations provide no affirmative defense to a disannexation proceeding under section 4B-6 for the reason that such alleged facts do not constitute a deprivation of school privileges as to the remaining area. The School Code makes ample provision for the fitting of the remaining territory into the school system of the State, either by annexation to another district, by organizing an appropriate new district, or by sending the children of the territory to a school in an existing district, at public expense. (*People* v. *Drummet.*)

No facts here in evidence indicate that the remaining territory could not continue to operate as a school district.

Affirmative defense No. 4 asserts the assessed value of the property of district No. 4 will be reduced to such an extent by this disannexation as to render it financially unable to construct a new building and to maintain and operate a school. It is required that those facts constituting an affirmative defense must be set up in the pleadings. (Ill. Rev. Stat. 1953, chap. 110, par. 167(4); Jones Ann. Stat. 104.043.) Sufficient facts are not evident from the pleadings to adequately constitute this allegation a defense. Moreover, we have indicated that it is not necessary that District No. 4 build, maintain or operate a school, or even continue as a school district.

Affirmative defense No. 5 asserts that it will be impossible for the children in the annexed territory to attend school at Norris City where the high school is located, for the reason that distances are too great for reasonable transportation, and the roads are inadequate for bus transportation. Again the pleadings fail to set forth sufficient facts to constitute this allegation a defense. No distances are alleged. Nothing indicates that the children will have to go to Norris City to high school. The roads are certainly no more insufficient for transportation of pupils in the annexed territory as a part of the Norris City School District than they were as a part of Community Consolidated School District No. 4. The same reasoning applies to affirmative defense No. 7 wherein plaintiffs averred that the annexation causes the Norris City School District to become so large that it will not be reasonably possible for children abiding therein to attend the high school for said district which is located in Norris City.

It thus appears that affirmative defenses numbered 2, 3, 4, 5, and 7 do not constitute valid affirmative defenses and were properly stricken from the pleadings.

We therefore conclude that the disputed territory was properly detached from Community Consolidated District No. 4 of Gallatin County and annexed to the Norris City School District, and that the petition, election, certification, and statute under which the proceeding was effected are legal and valid. The judgment of the circuit court of Gallatin County is affirmed.

*Judgment affirmed.*