Walter Boughton, et al., Appellants, v. Irving A. Shears, County Superintendent of Schools of Kendall County, Illinois, et al., Appellees.

Gen. No. 11,436.

Second District, Second Division.

February 23, 1961.

Samuel Saxon, of Plainfield, for appellants.

Matthews, Jordan, Dean & Suhler, of Aurora, and Jerome Nelson, State's Attorney, of Yorkville, for appellees.

SPIVEY, J.

This is a proceeding under Section 8–9 of the School Code, Chap. 122, Sect. 8–9, Ill. Rev. Stat. for the organization of a community unit school district. The Circuit Court of Kendall County on Administrative Review found the record sustained the findings and order of the County Superintendent of Schools of Kendall County calling an election for the purpose of voting on the formation of such district.

Objectors Walter Boughton et al. individually and as the Board of Education of Wheatland Consolidated School District No. 40C, Will and DuPage Counties, Illinois, and Glen and Ruth Pearson appeal to this court from the Circuit Court's order of March 3, 1960. No other objectors appealed.

The proposed district comprised all of Community High School District No. 300, Kendall, Kane and Will Counties, conducting grades 8 to 12; part of Community Grade School District No. 8, Kendall, Kane and Will Counties, Illinois, conducting grades 1 to 8; part of Community Consolidated School District 40C, Will and DuPage Counties, Illinois, conducting grades 1 to 8; and part of Bristol Community Grade School District No. 12, Kendall and Kane Counties, conducting grades 1 to 8. None of the exclusions or inclusions of parts of existing school districts were prohibited by law.

The proposed district was the territory making up District 300 as it existed which included, all of District 8 except a small portion attached to Yorkville High School District No. 100, a part of District 12, and a part of District 40C. The major portion of Districts 300 and 8 are co-extensive.

The appellants here are those persons objecting as residents and voters of District 40C and Glen and Ruth Pearson, owners of 160 acres of land located at the extreme east side of Districts 300 and 8.

Appellants contend that the record does not support the finding that it is for the best interest of the school area and the educational welfare of the pupils therein. (Section 8–9 of the School Code)

In this respect their argument is principally directed to the resulting financial condition of the proposed district and District 40C.

The record discloses that the assessed valuation of the property located in District 40C would be reduced

218

from about four million dollars to approximately three million dollars. In spite of former school survey reports, District 40C was created, and a completely fireproof grade school was erected which will accommodate 120 students and offers an accredited school curriculum.

District 40C has an enrollment of 72 grade school students of which 16 are residents of that portion of the district to be incorporated in the new district and would upon entering high school attend the present District 300 school.

The assessed valuation of District 8 is $21,482,815.00 and of District 300 $22,746,225.00, each with a maximum taxing rate of 1.36% for educational purposes and .3750% for building purposes. Upon creation the proposed district would have an assessed valuation of $22,746,225.00 with a 1.60% educational purpose and a .25% building purpose tax limitation. It was further shown that these figures do not reflect the assessed valuation of two new plants, one being Caterpillar, as well as 150 new homes recently built in the territory.

In 1957, the combined tax levies of both Districts 300 and 8 for educational and building purposes were both below the maximum rate permitted each. In 1956, the total tax levy for all purposes was 1.121% for District 8 and .829% for District 300, and in 1957, .997% for District 8 and for District 300, .789%.

Appellants point out that the bonding power of the new district would be $1,137,311.25, whereas District 8 now has a bonding limit of $1,074,140.75, and District 300, $1,137,311.25, thus losing $1,074,140.75. On July 1, 1958, District 8 had a bond indebtedness of $414,000.00, and District 300 outstanding bonds of $333,000.00 for a combined indebtedness of $747,000.00, leaving a combined further bonding power of only about $390,000.00. The bonded indebtedness is being reduced at the rate of $90,000.00 each year.

In 1958, three separate propositions to authorize the issuance of bonds for building purposes were submitted at a single election to the voters of Districts 300 and 8. All three propositions totaling $415,000.00 were defeated. The propositions were, District 8, $155,-000.00 for ten class rooms; District 300, $190,000.00 for eight class rooms and one biological science room; and District 300, $70,000.00 for shop area. The need for this construction will continue whether the proposed district becomes a reality or not.

The spirit of the community unit law is to promote and foster larger, stronger and economically sound school districts through consolidations and mergers of territory, to the end that the educational facilities of the children of the State will be bettered. People v. Newman Community Unit School District No. 303, 1 Ill.2d 170, 115 N.E.2d 606. Unless otherwise unsound it would seem that they should be favored and encouraged.

District 300 has served the high school needs of three grade school districts, District 8 almost in its entirety, and District 12 and District 40C in part. Each of the grade school districts are governed by their separate boards each having some jurisdiction and taxing power over the property located in District 300. While it appears that the respective boards of Districts 300 and 8 have worked in harmony yet there have been differences affecting the overlapping territory. The fact that they have in many respects worked together is no reason to deny consolidation. The creation of one board in the place of four boards would as pointed out by appellee eliminate sources of friction and maladministration, permit a coordinated salary schedule which has been a source of annoyance, eliminate competition for tax dollars, allow a coordinated curriculum between grade school, junior high school, and make possible the furnishing of special educational fields.

There seems to be no substantial argument against the proposition that the actual educational curriculum that could be offered by such a consolidation of efforts would be superior.

As we have previously pointed out, appellant's most serious objection is directed to the question of finance. This argument has in all cases been directed to a comparison between the combined maximum tax revenue and bonding power based upon the assessed valuation of the overlapping property of Districts 300 and 8, as compared to the maximum revenue and bonding power of the proposed district.

Like many other communities, the demands on the educational facilities are increasing. How far it will rise in this proposed district would, from the record, be speculative for us to decide.

Without regard to the increased assessed valuation of the property already shown to be within the limits of the proposed district, it is a simple mathematical calculation to find that the 1957 combined tax levy of Districts 300 and 8, for educational purposes was only one-half of the maximum amount based upon the increased rate available to the proposed district for like purpose. To a greater degree the fact is the same with regard to the maximum tax levy for building purposes.

Neither shall we conjecture as to the reasons underlying the defeat of the three bond issues totaling $415,000.00. Considering the increase of assessed valuation and the reduction of the bonded indebtedness at the rate of $90,000.00 a year, we do not feel that the present needed building program would be defeated for lack of an adequate bonding limit.

The territory of the principal objector, District 40C, included in the proposed district must be included being mandatory for if omitted that portion would result in the creation of small portions of non-high school

territory which is prohibited by Section 4B-3 of the School Code, Chap. 122, Sect. 4B-3, Ill. Rev. Stat.

As our Supreme Court said in People ex rel. Warren v. Drummet, 415 Ill. 411, 114 N.E.2d 364, "Perfection cannot always be achieved in the initial proceeding incident to the formation of a new school district."

District 40C argues that by reducing its assessed valuation it will result in loss of revenue thus making its future operation difficult. This contention is without merit. People ex rel. Warren v. Drummet, 415 Ill. 411, 114 N.E.2d 364, and Kinney v. County Board of School Trustees, 7 Ill. App.2d 286, 124 N.E.2d 292.

We find that the decision of the County Superintendent of Schools of Kendall County that the formation of the new consolidated school unit is for the best interests of the schools of the area and the educational welfare of the pupils is amply fortified by the record.

Turning now to the farm owned by Glen and Ruth Pearson. It was alleged in the amended complaint that the petition erroneously included the 160 acre Pearson farm as a part of Districts 300 and 8, when it was in fact a part of Plainfield Community Consolidated District No. 202, Will and Kendall Counties, Illinois. It was also alleged that the formation of the new district would be against the best interests of the children attending school from that quarter section.

In November 1952, the Pearsons petitioned the respective County Boards of School Trustees of Kendall, Kane and Will Counties to detach this quarter section from Districts 300 and 8 and annex it to Plainfield Community Consolidated School District No. 202, Will and Kendall Counties, Illinois, in accordance with Section 4B-2 of the School Code, Chap. 122, Sect. 4B-2, Ill. Rev. Stat. 1951. Section 4B-2, at the time of the

filing of this petition for disconnection and annexation, required the concurrent action by approval of the County Board of School Trustees of each County affected.

The County Board of Kendall County denied the petition after an appropriate hearing on January 5, 1953, and after like hearings the County Boards of Will and Kane Counties allowed the petition and change of boundaries on May 11, 1953, and July 6, 1953 respectively.

The Pearsons on August 1, 1953, filed a petition under the Administrative Review Act, Chap. 110, Sect. 264 et seq., Ill. Rev. Stat. 1953, in the Circuit Court of Kendall County, Illinois, to review the order of disallowance by the County Board of School Trustees of Kendall County.

On November 17, 1954, the Circuit Court of Kendall County entered its order that the Kendall County Board's order of January 5, 1953 disallowing the disconnection and annexation "be and the same is hereby reversed in whole."

The General Assembly in 1953 amended Section 4B-2 of the School Code to provide that such detachments could be granted by the action of the County Board of School Trustees of the County in which the County Superintendent of Schools has supervision over the annexing district. In the Pearson case it would have been the County Board of Trustees of Will County. This 1953 amendment became effective on July 13, 1953.

While not controlling it is interesting to note that this section was again amended in 1955 requiring disconnection and annexation petitions to be concurrently acted on by the county board of school trustees of (1) the county in which the county superintendent of schools has supervision over the district from which the petition seeks to have territory detached or if the territory is proposed to be detached from a district

or districts lying in more than one county, then the county board of school trustees in which the county superintendent has supervision over the greatest portion of such territory, and (2) the county board of school trustees of the county in which the county superintendent of schools has supervision over the district to which the territory is proposed to be annexed.

Prime consideration is given to the status of the Pearson petition on July 13, 1953, the effective date of the 1953 amendment of Section 4B–2 of the School Code. The amendment became effective between the dates of the decision rendered by the County Board of School Trustees of Will County on July 6, 1953, and the filing of the petition for Administrative Review in the Circuit Court of Kendall County on August 1, 1953.

■ The question is then, did the Pearson petition for disconnection and annexation abate on July 13, 1953. We conclude that it did and that the Pearson land remained in a part of Districts 300 and 8 in that the administrative procedure under Section 4B–2 as it existed at the commencement of the proceeding was never concluded.

The administrative processes had not been completed and there was no express savings clause regarding pending proceeding nor any express manifestations in that regard.

The 1953 Amendment of Section 4B–2 made material changes concerning venue, filing of the petition, service of the copies of the petition and the signing of the petition.

■ It was pointed out in Board of Education v. Nickell, 410 Ill. 98, 101 N.E.2d 438, there are no vested rights in a school district by its inhabitants. With or without their consent, over their protests, even without notice or hearing the State may take the

224

school facilities in the district without compensation and give it to other districts or agencies, and may divide, contract or expand the area of a district or unite it with another district or even abolish it at the will of the legislature.

An amendment of Section 4B–5 which went only to the reduction in the time for filing a petition under the Administrative Review Act was in this same respect considered by the Supreme Court in Board of Education v. Brittin et al., 11 Ill.2d 411, 143 N.E.2d 555, and it was said,

"The legislature unquestionably knew of this court's holding in Lincoln Community High School District No. 404 v. Elkhart Community High School District No. 406, 414 Ill. 466, 111 N.E.2d 532; Board of Education v. Nickell, 410 Ill. 98, 101 N.E.2d 438; and Dolan v. Whitney, 413 Ill. 274, 109 N.E.2d 198, to the effect that unless there is a savings clause all pending actions must abate unless in conformity with the amendatory act. In these three cases reviews of the administrative action were pending in the courts and the effect of the amendment was to nullify the proceedings. There is no difference whether the cases were in the administrative stage, as here, or the court-of-record state in the foregoing cases, where there is no savings clause. We also pointed out in such cases that the Statutory Construction Act (Ill. Rev. Stat. 1955, Chap. 131, par. 4) does not apply.

"The legislature did not expressly declare that all pending, unappealed administrative orders of detachment and annexation should become final and unappealable nor did it declare that such proceedings should not abate. The decisions in the cited cases command the conclusion that where a law is changed and given retroactive effect, reservation of any proceeding or part thereof had under the old law must be expressly manifested."

In Dolan v. Whitney, 413 Ill. 274, 109 N.E.2d 198, it was said,

"In the Nickell case, the administrative process had not been completed when the new law became effective, in the present case, the litigation had proceeded to the point where an appeal was pending in this court when the new law became effective. But what is important is that in neither case had the proceedings been concluded when the underlying statute was repealed without any savings clause protecting pending matters."

In this, the Dolan case, the Supreme Court dismissed the appeal.

The Circuit Court of Kendall County should have dismissed the Pearson appeal, the question having become moot under the underlying statute from which the appeal was taken.

The Pearsons further contend that their personal wishes and desires should have been given consideration in the instant case. Their authority cited involves a disconnection and annexation petition and not that of a formation of a new district. Neither do we know of any like authority when applied to the formation of a new district.

Without regard to the existence of any authority we find that the record sustains the Board's findings that the educational welfare of the affected districts and their pupils as a whole will be best served by the creation of this new consolidated district.

The order of the Circuit Court of Kendall County is affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.