Community Unit School District No. 2, Marshall County, Illinois, et al., Plaintiffs-Appellants, v. Dale Moore, County Superintendent of Schools of Woodford County, Illinois, et al., Defendants-Appellees.

Appeal of Board of Education, Low Point-Washburn Community Unit District No. 7, Woodford County, Illinois, et al., Plaintiffs, v. County Board of School Trustees of Marshall County, Illinois, et al., Defendants. Board of Education, Low Point-Washburn Community Unit District No. 7, Woodford County, Illinois, Certain Plaintiff-Appellant, Delbert Shirley, et al., Certain Plaintiffs-Appellees, and County Board of School Trustees of Marshall County, Illinois, et al., Certain Defendants-Appellees.

Gen. Nos. 11,806, 11,825.

Second District, First Division.

January 23, 1964.

14

Black, Black & Borden, of Peoria, for Community Unit School Dist. No. 2, Marshall County, et al., appellants, and for County Board of School Trustees of Marshall County, et al., appellees.

Isadore I. Leiken, of Minonk, C. B. Ullrick, of Peoria, and B. H. Hishen, State's Attorney, Woodford County, of Eureka, for Dale Moore, County Superintendent of Schools of Woodford County, et al., appellees; Isadore I. Leiken and C. B. Ullrick, for Board of Education, Low Point-Washburn Community Unit School Dist. No. 7, Woodford County, appellant.

SMITH, J.

At the behest of all parties we consolidated two cases apparently in conflict for hearing in this court. No. 11806 is an appeal from a judgment of the Circuit Court of Woodford County affirming an order of the County Superintendent of Schools of that county calling an election to form a new community unit school district from territory in Woodford and Marshall Counties. No. 11825 is an appeal from a judgment of

the Circuit Court of Marshall County affirming an order of the School Trustees of that county attaching much of the same territory to adjoining school districts. We note at the outset that two educational functionaries were presumably each laboring in its own legislatively authorized sphere. Our problem is to determine whether they meet head-on in a jurisdictional conflict and, if so, the effect of such a collision.

That the annexation proceedings in Marshall County were started before the petition for the organization of the new unit district in Woodford County was filed is not in dispute. Institution by the losers in each instance of proceedings for administrative review of the respective orders by the appropriate circuit courts had the effect, under proper statutes, of suspending further action in each instance and operated as a supersedeas. Ill Rev Stats 1961, Chap 122, Pars 7-7 and 11-6. Thus everything is quiescent on the home front.

The territory described in the petition to organize the new unit district included all of Community Unit School District No. 7, a part of Community High School District No. 18 and a part of Common School District No. 103, the latter two districts having common boundaries and located solely in Marshall County. District No. 103 had maintained its accredited status with the State. District No. 18 had failed to conduct a recognized High School for two consecutive years. Acting under the provisions of Par 5-32 of the School Code, the State Superintendent of Public Instruction issued a directive to the School Trustees of Marshall County to dissolve said district and dispose of its territory in the manner provided by Par 7-11 of the School Code by attaching its territory to surrounding districts. To provide education for the students of District 18 some action on the part of somebody was patently required.

16

Interested parties in No. 11806 moved to dismiss the petition to organize a new unit district for the reason that (a) the previously filed annexation petitions covering a part of the same territory precluded consideration of the petition by the County Superintendent, (b) that it was mandatory for the School Trustees to attach the territory of District No. 18 to adjoining districts, (c) that the new district, if formed, would fragment District No. 103, and (d) would leave District No. 103 without school buildings or equipment.

Appellants in 11806 rely heavily on a statement in People v. Newman Community Unit School Dist. No. 303, 1 Ill2d 370, 115 NE2d 606, that a "proper petition is one which does not include within the territory described any territory in another petition already on file." In Newman, while waiting for an election to be held for the organization of a new district, petitions for the annexation of part of the same territory were filed. The annexation petitions were held invalid. The court pointed out that the legislature over a decade had fostered larger, stronger and economically sound districts and that it was obviously not the intention of the legislature that this benign purpose could be defeated by annexation petitions subsequently filed. It will be observed that the factual situation in Newman is just the converse of the one facing us. Text in one context is not always text for the next.

In Pritchett v. County Board of School Trustees, 5 Ill2d 356, 125 NE2d 476 the School Trustees of Gallatin County had instituted proceedings to annex certain territory to some adjoining high school districts. Thereafter a petition was filed with the County Superintendent of White County to annex the same territory to a community unit district. The trial court held that the White County petition had priority. In

17

affirming, the Supreme Court discussed Newman and said:

> "In the instant case, considering the language used and the object to be obtained, we are of the opinion that the circuit court properly held that the appellees were not prohibited from acting until the annexation proceedings instituted by the Gallatin County Board had been disposed of."

A careful analysis of the cases suggests that the principle of "first come first served" may well apply to competing annexation proceedings or to competing new district petitions involving a part or all of the same territory. It does not apply to the case at bar. We necessarily conclude that a petition to organize a new unit district, as here, whether filed before or after the filing of annexation proceedings involving all or a part of the same territory, has priority and proceeds independently of the annexation proceedings.

Pritchett likewise disposes of appellants' second contention. It was there urged that it was mandatory upon the school trustees of Gallatin County to dispose of all nonhigh school territory after August 30, 1953 and their action in so doing was valid and the only method of so doing. In repudiating that doctrine the Supreme Court said:

> "We concur that the general plan of the legislature to eliminate nonhigh school districts made it mandatory that some action be taken so to do, but we disagree that the form of annexation provided in said sections was to be the exclusive mode of procedure."

We think the same philosophy applies to the case at bar and that the duty of the school trustees to dis-

18

solve District No. 18 and distribute its territory is no bar to the proceedings to organize the unit district. It has been noted that only a part of Districts 18 and 103 are included in the petition to organize the unit district. The record shows that what will remain in those districts will be completely isolated from an area comprising seven and one-half acres. It is urged that this may not be done as a matter of law and that its effect will be to leave the remaining territory in these districts without school buildings or facilities. As to the lack of facilities the record leaves us with a dead heat on our hands. The complaint for administrative review asserts it and the answer denies it. One counsel says it does; another says it doesn't. Neither was sworn as a witness. One witness implies that there are two buildings in 103, but nowhere in the record are they located for us. We are thus left in a vacuum on the question.

It seems to be well established that in attachment or detachment proceedings no part of the remaining territory may be isolated or separated. Its contiguity must be maintained. People v. Camargo Community Consol. School Dist. No. 158, 313 Ill 321, 145 NE 154; People ex rel. Dixon v. Community Unit School Dist. No. 3, 2 Ill2d 454, 118 NE2d 241. Since the territory in original organization must be contiguous these cases hold that you cannot, through attachment or detachment, destroy that contiguity. In brief, you may not do by indirection what the statute prohibits at the time of the formation of the district. But, there are substantial differences between the formation of unit districts and attachment or detachment proceedings. Radford v. Withrow, 401 Ill 14, 81 NE2d 417. The fact that certain territory could have been included or excluded is not a factor in determining the validity of organizing a new unit district. In People v. Drummet, 415 Ill 411, 114 NE2d 364, at 369 the Court said:

19

> "If the territory included in the district is contiguous and compact, objections that the district could have been formed in a better and different manner are not open to consideration. The fact that territory is excluded which might have been included, destroys neither the contiguity nor the compactness of the unit district."

We think it is no longer debatable that the formation of unit districts has been both legislatively and judicially encouraged and fostered. That perfection cannot always be achieved is conceded. That adjustments in the districts or parts thereof remaining become necessary is patent. This was early recognized by the Supreme Court in People v. Deatherage, 401 Ill 25, 46, 81 NE2d 581, 593 in this language:

> ". . . [T]he School Code makes ample provision for the fitting of detached, or left-over territory, into the school system of the State, either by annexation to an existing district, by the organization of an appropriate new district, or by sending the children of the territory to a school in an existing district, at public expense."

We readily assert under this record that there will be work to be done by other school agencies if the electorate establishes the new unit district by its vote. This does not militate against the validity of the petition or the order of the County Superintendent of Schools of Woodford County calling the election. The judgment of the Circuit Court of Woodford County affirming that order is necessarily affirmed.

We now turn to 11825 and examine the problem and the factual situation confronting the School Trustees of Marshall County. They met on July 10, 1962, found that District No. 18 was automatically dissolved for failure to maintain a lawful school for two consecutive years and called a hearing to deter-

20

mine the disposition of its territory for July 31. The boundaries of District No. 18 and District No. 103 were identical. They were entirely surrounded by Unit School Districts Nos. 2, 4 and 7. Par 7–11 of the School Code directed the trustees to "attach the territory of such dissolved district to one or more districts . . . ." At the hearing on July 31 District No. 103 filed a certified copy of the order of the County Superintendent of Schools of Woodford County calling an election for the organization of a new unit district which included parts of territory in Districts No. 18 and 103. No. 103 denied the jurisdiction of the trustees to destroy District No. 103 by attaching its territory to adjacent unit school districts. The order of the school trustees attached all of the territory of District No. 18 to adjoining districts and found "that by authority of Section 11–9 of the said Code, the attachment of the said territory to one or more of the Community Unit School Districts will automatically dissolve the La Rose Grade School District No. 103." The Circuit Court of Marshall County affirmed this action.

There appears to be neither judicial precedent nor legislative directive as to the effect of the mandatory disposition of the territory of a dissolved district on an underlying or overriding district whose legal status is unimpaired, where the adjoining districts are not of like texture. It would appear that the territory of High School District No. 18 could have been attached to a high school district or districts adjoining it without disturbing the legal status of 103. But no such districts adjoin. 18 is entirely surrounded by Unit School Districts. Par 5–32 of the School Code provided that upon failure to maintain a recognized school for two consecutive years such "district shall be automatically dissolved." The district was at an end. The School Trustees had no alternative except to attach its territory to adjoining districts under the provisions of

21

Par 7–11 of the Code. These were unit districts maintaining grades 1 to 12. The School Trustees were aware of the petition in Woodford County to form a new unit district embracing a part of the territory of both 18 and 103. They knew that under the provisions of School Code 11–9 the parts of each district included in the new district "shall automatically be detached from such districts and become a part of the new community unit school district." If the election to form the unit school district was successful they were charged with the necessity of providing for the remainder of 18 and 103 in some fashion. They knew that if such an election failed they were charged with the necessity of providing for District No. 18. But what of District No. 103 if the election failed? We think the necessary legal effect of transferring all of the property of 18 to adjoining districts effectively and as a matter of law destroyed District No. 103. To hold otherwise is to repudiate judicially the legislative mandate contained in Pars 5–32 and 7–11 of the Code. To hold otherwise is to attach a judicially created wood's colt to the family of the adjoining unit school districts without statutory provision for its care or attention.

It was said in People ex rel. Community High School Dist. No. 231 v. Hupe, 2 Ill2d 434, 448, 118 NE 2d 328, 335:

> "It is a canon of statutory construction that where the passage of a series of legislative acts results in confusion and consequences which the legislature may not have contemplated, courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes."

It is apparent that the legislature has not specifically provided for the circumstance here confronting us.

22

Consonant with the philosophy above expressed, we are of the opinion that the School Trustees acted in a practical manner to provide educational facilities for the students in Districts No. 18 and 103 no matter what the results of the election to organize the new unit district might be. The position of the courts in school matters has been rather succinctly stated in School Directors of School Dist. No. 82 v. Wolever, 26 Ill2d 264, 267, 186 NE2d 281, 283, as follows:

> "The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interests of the schools and the pupils affected by a change in boundaries."

We, therefore, hold that the judgment of the Circuit Court of Marshall County affirming the order of the School Trustees of that County should be and it is hereby affirmed. If there are errors, imperfections or inequities in that order, Deatherage, above noted, suggests that other provisions of the School Code may be utilized to correct them after the results of the election to organize the new unit district are known. It is apparent that if that election is successful both Districts 18 and 103 will be fragmented under the express authority of Par 11–9 of the Code, and the order of the School Trustees superseded as to the territory involved in the election. If that election is unsuccessful, then the order of the School Trustees makes ample provision for the education of the pupils in each district with such adjustments as may be appropriately made.

Accordingly, the judgments of the circuit courts of Woodford and Marshall Counties are each affirmed.

McNEAL, P. J. and DOVE, J., concur.